**Cheryll WHOBERRY, Petitioner–Respondent,**

v.

**Billy WHOBERRY, Respondent–Defendant,**

**Linda Gilliam, Third–Party Intervenor–Appellant.**

No. 22166.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 29, 1998.

Stephen E. Walsh, Moore & Walsh, Poplar Bluff, for appellant. for Appellant.

Robert L. Smith, Smith & Miller, Poplar Bluff, for Respondent.

SHRUM, Presiding Judge.

This is a domestic relations case that involves part of the grandparent visitation statute. The subsections implicated are § 452.402.1(1) (allowing grandparents to intervene in their child's dissolution case and seek visitation) and § 452.402.2 (authorizing grandparent visitation only when visits are in child's best interest).[1] The narrow question presented is whether *Herndon v. Tuhey,* 857 S.W.2d 203 (Mo.banc 1993), and the limits on grandparent visitation imposed by that case, constrained the trial court so that, as a matter of law, it could grant this intervening grandmother only one twenty-four-hour visitation per month with her granddaughter plus four hours on grandparents' day and two hours on the grandchild's birthday. We answer, "No." We reverse and remand.

## PROCEDURAL BACKGROUND AND FACTS

In October 1992, the trial court dissolved the marriage of Cheryl Ann Whoberry Kirkley (Mother) and Bill H. Whoberry (Father). Mother was awarded custody of their only child, a daughter, Renea L. Whoberry, born January 23, 1992. Father was awarded visitation "at all reasonable and proper times" and was granted periods of temporary custody every weekend, on alternative major holidays as designated, and on the child's birthday. The trial court ordered that Father's

---

1. All statutory references are to RSMo Cum. Supp.1997 unless otherwise stated.

visitation be "in the presence of his parents who can assist him with child rearing responsibilities."

In October 1996, Father moved to modify the judgment as to child custody. He alleged a substantial and continuing change of circumstances based on his active duty in the Armed Forces, i.e., that such duty precluded exercise of visitation as scheduled in the original judgment. Mother filed an answer and also a cross-motion for modification. The issues presented by these motions were resolved by an agreement between Father and Mother that was approved by the Court on June 27, 1997. The judgment thus entered gave Father specified visitation rights "during his leave periods from the U.S. Army," required Father to give Mother at least twenty days' notice of his leave period, made provisions for transfer of physical custody, and ordered a different support amount.

Linda Gilliam (Intervenor) is Renea Whoberry's paternal grandmother. On October 22, 1996, she moved to intervene in the case based on § 452.402.1(1). While her intervention motion was pending, Intervenor filed a "Motion for Temporary Visitation" on December 12, 1998. This latter motion alleged that Mother had denied Intervenor visitation with Renea, thus implicating § 452.402.1(1). On December 18, 1998, the court held an evidentiary hearing on the motion for temporary visitation. Six days later, the court granted Intervenor temporary visitation with Renea every other Friday from 6:00 p.m. Friday until Saturday at 6:00 p.m. and also temporary visitation from 8:00 a.m. until 4:00 p.m. on Christmas eve.

Later, Intervenor filed a pleading in which she alleged that her son (Father) was on active duty in Ft. Collins, Colorado. Intervenor further alleged that it would be in Renea's best interest that she have an expanded visitation with Intervenor so she could "visit and interact with other members of the father's family as well as to be given the opportunity to visit her father at his Army base." Intervenor asked that the court award her "weekend visitations," an "extended" summer month visitation period, and such other provisions as the court deemed "just and proper."

At a hearing on Intervenor's motion, the following evidence was adduced. Intervenor had an extended family in the Poplar Bluff area and also in St. Louis and Springfield. Intervenor, her husband Warren, and Intervenor's daughter (Nicki) had been part of Renea's family from the day she was born. The child had a very close, special relationship with Father's family. A series of photographs put in evidence depicted instances where Renea was with Intervenor and her family over the years.

Once Father entered the Armed Forces, Renea's visits at Intervenor's home were the only means by which she regularly communicated with Father. Every Friday night and again on Saturday when Renea was with Intervenor, she (Renea) routinely talked with Father on the telephone. Mother did not have a telephone and had not had one since July 1997. Mother agreed that "the only contact [Renea had] with her father [was] through the Gilliams."

Intervenor described Renea's demeanor when she visited, as follows: "She's happy to see us.... [S]he starts telling us about school and asking about all of us." Intervenor believed that expanded visitation would give Renea "time to settle in ... better," more opportunity "to visit with other family members and get her visits in with her dad." Intervenor asked for (1) visitation rights with Renea every other weekend, (2) some weeks of summer visitation so Renea could visit her father, and (3) holiday visitation, including expanded Christmas visits. As Intervenor explained it, she wanted expanded visitation so she could "fill in" for Father in seeing that Renea had contact with Father's side of the family.

As expected, the record reveals animosity between Intervenor and Mother. On earlier occasions, each had lodged complaints with local authorities about the other. They could not work together concerning Renea's medications during visitation periods. Intervenor complained that if she saw Renea in public with Mother, she was not allowed to speak to the child. She also deplored her inability to talk with Renea on the telephone and Moth-

er's efforts to keep the child away "from the other side of the family."

Mother testified there had been "hard feelings" between Intervenor and her in the past and this had "gotten worse." Although Mother testified she had no objection to Intervenor seeing Renea, she did object to anything more than "one Saturday a month." In Mother's view, overnight or weekend visitation "disrupted [her] family life," had adverse effects on Renea's health (because Intervenor smokes), resulted in Renea's being upset, jittery, and "jumpy," and precluded Renea from being involved in weekend activities in which she wanted to participate. In summary, Mother's desire was "to be able to raise [Renea] without interference."

## JUDGMENT

After hearing the evidence, the trial court limited Intervenor's visitation with Renea to "every third weekend from Friday at 6:00 P.M. to Saturday at 6:00 P.M., commencing January 16, 1998." The court also granted Intervenor visitation "each Grandparent's day from 2:00 P.M. to 6:00 P.M., and the child's birthday from 4:00 P.M. to 6:00 P.M." As a part of this judgment, the trial court wrote:

"In so ruling the Court finds the case of *Herndon v. Tuhey*, 857 S.W.2d 203 (Mo. 1993), controlling on the issue of grandparent visitation and the extent to which it may infringe on the rights of the custodial parent. In *Herndon*, a trial court's award of visitation to grandparents on alternate weekends (Saturday from 9:00 A.M. to 6:00 P.M.), a few hours on Thanksgiving and Christmas and one week each summer was found excessive and reversed.

"Clearly, an extension of visitation to Intervenor in this proceeding would be necessary in order to foster a relationship between the child and her father's family. This is made all the more apparent by the fact that the father himself is a member of the armed forces stationed outside Missouri and unable to visit the child on any regular basis. [Mother's] reluctance to cooperate and allow visitation to Intervenor's

family is painfully apparent from the record. In all likelihood, Intervenor would have no meaningful contact with Renae [sic] absent Court intervention. Regrettably, this Court is bound by the constraints of *Herndon* and unable to grant visitation in addition to that which is herein ordered."

Intervenor appeals from the foregoing judgment.

## DISCUSSION AND DECISION

■ In grandparent visitation cases, as in most court-tried civil cases, we are guided by the standard of review articulated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). *See Farrell v. Denson*, 821 S.W.2d 547, 548 (Mo.App.1991). We affirm the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy* 536 S.W.2d at 32[1].

Here, Intervenor complains that the trial court erroneously applied the law. Specifically, she maintains that the trial court erred in "basing its judgment on and restricting [Intervenor's] visitation periods relying on *Herndon v. Tuhey*, 857 S.W.2d 203 (Mo.banc 1993) because the facts in this case are distinguishable." [2] We agree.

The ordering of grandparent visitation is authorized by § 452.402. In pertinent part, § 452.402 provides:

"1. The court may grant reasonable visitation rights to the grandparents of the child.... The court may grant grandparent visitation when:

"(1) The parents of the child have filed for a dissolution of their marriage. A grandparent shall have the right to intervene in any dissolution action solely on the issue of visitation rights. Grandparents shall also have the right to file a motion to modify the original decree of dissolution to seek visitation when such rights have been denied to them;

2. Intervenor presents two points relied on, both of which contain essentially the same arguments.

Accordingly, we address both points relied on together, without distinguishing between them.

"(2) One parent of the child is deceased and the surviving parent denies reasonable visitation rights; or

"(3) A grandparent is unreasonably denied visitation with the child for a period exceeding ninety days.

"2. Visitation may only be ordered when the court finds such visitation to be in the best interests of the child. The court may order reasonable conditions or restrictions...."

Our legislature added subsection (1) and (3) to § 452.402.1 in 1988. It was by § 452.402.1(3) that the legislature first empowered courts to order visits by grandparents with grandchildren even though the parents of an intact nuclear family opposed such visits.[3] Earlier enactments authorized grandparent visitation only when the family had broken down by death. *See e.g.* § 452.402, RSMo Cum.Supp.1977, § 452.402, RSMo Cum.Supp.1984.

■ The *Herndon* case, which the trial court viewed as a constraint on its authority to award grandparent visitation, dealt with visitation imposed on an intact nuclear family that was estranged from the maternal grandparents. When the grandparents sued for visitation under §§ 452.402.1(3) and 452.402.2, the parents challenged the constitutionality of these provisions. They claimed to have a basic constitutional right to raise their children as they saw fit, free from state intrusion absent a showing of harm to the children. The trial court rejected the parent's constitutional challenge and ordered grandparent visitation on alternate weekends, on certain holidays, and during part of the child's Christmas and summer vacation time. The parents appealed. In its analysis, our supreme court acknowledged that parents have a right protected by the Due Process Clause of the Fourteenth Amendment "to make decisions affecting the family," but concluded that "this Constitutional right is not absolute." *Id.* at 207–08. Quoting from *King v. King,* 828 S.W.2d 630, 632 (Ky.1992), the court observed that it was "not unreasonable for the General Assembly to attempt to strengthen familial bonds.... If a grand-

parent is physically, mentally, and morally fit, then a grandchild will ordinarily benefit from contact with the grandparent. That grandparents and grandchildren normally have a special bond cannot be denied." *Herndon,* 857 S.W.2d at 209–10. The *Herndon* court concluded that §§ 452.402.1(3) and 452.402.2 were constitutional because they contemplate "only a minimal intrusion on the family relationship and because [these subsections are] narrowly tailored to adequately protect the interests of parents and children." *Id.* at 210.

Specifically, the court noted that § 452.402.1(3) is available only when a grandparent has been unreasonably denied visitation for a period exceeding ninety days and even then only upon a showing that visitation will be in the best interest of the child and subject to whatever "reasonable restrictions and conditions" that a court may "find appropriate." *Herndon* 857 S.W.2d at 210. The *Herndon* court interpreted the ninety-day language in § 452.402.1(3) as an "indication to the courts that visitation should not be excessive, should not be on a par with parental visitation in custody matters, and should not necessarily be commensurate with the contact between grandparents and grandchild prior to the deterioration of relations between the parties." *Id.* Based on that analysis, the court found that the visitation ordered by the trial court was too liberal and remanded the case for reassessment of visitation. *Id.* at 211.

We presume the language last quoted above is what the trial court seized upon when it "regrettably [was] ... unable to grant visitation in addition to that which [it] ordered." There are, however, fundamental factual and legal distinctions between *Herndon* and this case. Here the question is grandparent visitation for a family that is not only divided by divorce, but also a family in which Father is unable to secure *regular* visitation or contact between Intervenor and Renea as part of his visits due to distance and the nature of his employment. Section 452.402.1(1) is implicated here (along with

---

**3.** WEBSTER'S THIRD INTERNATIONAL DICTIONARY 1547 (1976) defines "nuclear family" as "a family group consisting of father, mother, and children—opposed to *extended family.*"

§ 452.402.2), not § 452.402.1(3). The "ninety days ... precondition" found in subparagraph (3), which is a major prong of the *Herndon* analysis, is not in subparagraph (1). When read together, §§ 452.402.1(1) and 452.402.2 are devoid of language that indicates *any* legislative intent to limit the *quantity* of grandparent visitation. Under the circumstances and considering the scope of *Herndon* as we understand it, *Herndon* did not compel the trial court to award only "minimal visitation." To the extent the trial court based its award on such perception, it misapplied the law.[4]

In reaching the foregoing conclusion, we recognize, of course, that we are constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. *Stephens v. Brenton,* 920 S.W.2d 109, 111[2] (Mo.App.1996); MO CONST. art V, § 2 (1945). However, we do not read the *Herndon* decision as addressing subsections (1) and (2) of § 452.402.1.

First, the *Herndon* court itself expressly limited the scope of the opinion when it said: "[W]e hold subsections 452.402.1(3) and 452.402.2 are constitutional." 857 S.W.2d at 210.

Second, we are confirmed in our view of *Herndon* by this language from the opinion: "We *interpret section 452.402, which requires as a prerequisite to ordering visitation an unreasonable denial of visitation for ninety days,* to mean that visitation is to be much more limited than what was granted by the trial judge here." *Id.* at 210. (Emphasis supplied.) The italicized language is broad (as if the entire statute were being interpreted), yet the underlined language (the bedrock of the opinion) and its reliance on a "prerequisite" of "ninety days" is a construction that is logical only when § 452.402.1(3) is implicated.

Third, *Herndon* is distinguishable for yet another reason. The basic concept that the state has an interest in promoting a child's welfare which undergirds § 452.402.2 and is approved by *Herndon,* also finds expression in § 452.375.4. In pertinent part, § 452.375.4 provides:

"4. The general assembly finds and declares that it is the public policy of this state to assure children frequent and meaningful contact with both parents after the parents have ... dissolved their marriage.... In order to effectuate this policy, the court shall determine the custody arrangement which will best assure ... such frequent and meaningful contact between the child and each parent, as is indicated in the best interests of the child under all relevant circumstances."

The peculiar facts of this case implicate 452.375.4, a situation that did not exist in *Herndon.* At trial, it was undisputed that the only contact between Father and Renea came via telephone calls when Renea visited with Intervenor. Accordingly, the possible utilization of §§ 452.402.1(1) and 452.402.2 (grandparent visitation) to achieve the public policy goals of § 452.375.4 (frequent and meaningful contact between Father and child) dictates an analysis different from that made in *Herndon.* If, after considering all relevant circumstances, the record supports a finding that "frequent and meaningful contact" between Renea and Father is in Renea's best interests per § 452.375, that such contact can be achieved in part by telephone calls during grandparent visitation, and that visits by Renea with Intervenor would be in Renea's best interests as contemplated by § 452.402.2, then the minimal intrusion guidelines indicated in *Herndon* are not mandated. To the extent that the trial court believed otherwise, it misapplied the law.

We realize that the eastern district of this court appears to have a contrary view about *Herndon's* scope. In *Komosa v. Komosa,* 939 S.W.2d 479 (Mo.App.1997), a father had

---

4. The question of whether these subsections are unconstitutional without language that suggests limits on the frequency of grandparent visitation with grandchildren of a divided family is not before this court. *See Barry v. Barrale,* 598 S.W.2d 574[7] (Mo.App.1980) (holding that statute that empowered juvenile court to grant visitation to grandparents where one parent was de-

ceased served a legitimate state purpose and was not unconstitutionally infirm). *See also Hollingsworth v. Hollingsworth,* 34 Ohio App.3d 13, 516 N.E.2d 1250 (1986) (holding that an adequate constitutional basis exists for a statutory distinction in grandparent visitation between divorced and nondivorced family situations).

custody of his son to the total exclusion of the mother. The father first lived with paternal grandmother but left after he and she became estranged. After grandmother intervened in the dissolution case, she was granted visitation essentially on par with usual parental visitation in custody matters. Later, the father remarried and then asked the court's approval pursuant to § 452.377 to move to Colorado with his new wife and take his son along. The trial court denied his request. On appeal, the eastern district reversed.

Relying in part on *Herndon,* the court held that "[r]equiring the father ... to obtain the permission of the grandmother or the court to move to Colorado to join his wife imposes an unconstitutional burden on him." *Id.* at 483. Additionally, the *Komosa* court held that on remand the trial court was to be guided by *Herndon* in considering future visitation for the grandmother and that such visitation should be "minimally intrusive" and "should not be granted more frequently than once very ninety days." *Id.* at 483[8]. Clearly, *Komosa* is factually distinguishable from this case. Moreover, the facts in *Komosa* may have justified awarding grandmother no more visitation than "once every ninety days" as the appellate court suggested. However, for the reasons first explained above, we simply disagree with the eastern district that *Herndon* compels a court as a matter of law to award grandparent visitation under § 452.402.1(1) that is only "minimally intrusive."

Whether on remand the trial court should grant Intervenor additional visitation, and, if so, to what extent, are questions about which we express no opinion. What is in Renea's best interests is a determination for the trial court to make and rests largely within its discretion. We have merely decided that, to the extent it felt constrained by *Herndon* to grant only minimal visitation to Intervenor, the trial court misapplied the law.

We make one final observation. Mother's brief contains two "points relied on" in which she is evidently seeking our review and reversal of the trial court's award of limited visitation to Intervenor. This we cannot do because Mother did not appeal.

"The general rule of appellate procedure is that, in the absence of a cross-appeal, the reviewing court is concerned only with the complaint of the party appealing and that the opposing party who filed no appeal will not be heard to complain of any portion of the trial court's judgment adverse to him."

*Goldberg v. State Tax Comm'n.,* 618 S.W.2d 635, 642[6] (Mo.1981). *See Sisco v. James,* 820 S.W.2d 348, 352[6] (Mo.App.1991).

Being persuaded that the trial court misapplied the law, we reverse and remand for further proceedings in accordance with this opinion.

MONTGOMERY, J., and GARRISON, C.J., concur.