Timothy HAMPTON, Appellant,

v.

Stephanie Ann HAMPTON, Defendant,

and

Jimmy Hardwick and Barbara Sue Hardwick, Respondents.

No. WD 56614.

Missouri Court of Appeals, Western District.

May 16, 2000.

J.D. Gorham, Richmond, for appellant.

Stanley M. Thompson, Richmond, for respondent.

Before BRECKENRIDGE, C.J., SPINDEN and SMART, JJ.

PATRICIA BRECKENRIDGE, Chief Judge.

Timothy Hampton appeals from the trial court's judgment modifying his decree of dissolution to award grandparent visitation. Mr. Hampton claims that the trial court erred in awarding grandparent visitation to his child's maternal grandparents and their spouses because the statute authorizing grandparent visitation does not include step-grandparents and because the trial court's grant of visitation to the grandparents and step-grandparents on alternate weekends violated his constitutionally-protected substantive due process rights. We reverse the trial court's judgment and remand the case to the trial court so that it can modify its order concerning grandparent visitation.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 7, 1998, the Circuit Court of Ray County entered a judgment dissolving

the marriage of Mr. Hampton (Father) and Stephanie Ann Hampton (Mother). One child, Haley Rosanne Hampton, was born of the marriage on December 1, 1994. The trial court found that it was in the child's best interests for the parents to share joint legal custody of the child, and for Father to be awarded primary physical custody of the child, subject to Mother's right to reasonable visitation. Specifically, Mother was awarded visitation on alternate weekends, alternate major holidays and two two-week periods in the summer.

Two months later, Father filed a motion to modify the judgment of dissolution in which he requested that Mother's visitation of the child be supervised, and he asked the trial court to terminate joint legal custody and to modify physical custody. One of the changes in circumstances Father listed in his motion to modify was Mother's impending incarceration.

Mother's parents and their respective spouses, Jimmy and Barbara Hardwick, Mother's father and stepmother, and Pamela and John Thacker, Mother's mother and stepfather, filed a motion to intervene in the modification proceeding. They requested leave to intervene so they could pursue visitation rights. The trial court sustained the Hardwicks' and the Thackers' motion to intervene. The Hardwicks and the Thackers then filed an answer to Father's motion and a petition to intervene and to request visitation rights.

The trial court called the case for hearing on October 22, 1998. Mother did not appear, and the trial court declared her to be in default. Father, the Hardwicks and the Thackers appeared. Father filed a motion asking the trial court to dismiss the Hardwicks' and the Thackers' petition on the ground that § 452.402.1(1), RSMo Cum.Supp.1998,[1] the statute authorizing grandparent visitation in cases of parental divorce, was unconstitutional. The trial court heard evidence on all pending motions.

At the end of the hearing, the trial court issued a judgment denying Father's motion to dismiss and modifying the prior dissolution decree. The trial court awarded sole legal custody of Haley to Father, awarded the Hardwicks and the Thackers visitation with Haley every other weekend from 6 p.m. on Friday until 6 p.m. on Sunday while Mother was incarcerated, and modified Mother's visitation of Haley after Mother's release from incarceration. The trial court ordered that, after Mother is released from incarceration, her original visitation will be reinstated but the visitation must be supervised by the Hardwicks or the Thackers.

Father appeals. He challenges the trial court's award of visitation to Barbara Hardwick and John Thacker, the step-grandparents. He further contends that the amount of visitation awarded to the Hardwicks and the Thackers violated his substantive due process rights. He does not challenge the trial court's designation of Barbara Hardwick and John Thacker as persons suitable to supervise visitation between Mother and Haley.

### STANDARD OF REVIEW

In grandparent visitation cases, as in most court-tried civil cases, an appellate court is guided by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Whoberry v. Whoberry*, 977 S.W.2d 946, 948 (Mo.App.1998).

### STEP–GRANDPARENTS ARE NOT ENTITLED TO VISITATION

In Father's first point, he claims that the trial court erred in sustaining the

---

1. All statutory references are to the 1998 Cumulative Supplement to the Revised Statutes of Missouri, unless otherwise indicated.

motion for leave to intervene filed by the maternal step-grandfather and maternal step-grandmother. He argues that § 452.402 does not expressly or impliedly authorize an award of visitation to step-grandparents. This court agrees.

Section 452.402 permits an award of visitation to grandparents. It states:

1. The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree. The court may grant grandparent visitation when:

(1) The parents of the child have filed for a dissolution of their marriage. A grandparent shall have the right to intervene in any dissolution action solely on the issue of visitation rights. Grandparents shall also have the right to file a motion to modify the original decree of dissolution to seek visitation rights when such rights have been denied to them;

(2) One parent of the child is deceased and the surviving parent denies reasonable visitation rights;

(3) A grandparent is unreasonably denied visitation with the child for a period exceeding ninety days; or

(4) The child is adopted by a stepparent, another grandparent or other blood relative.

2. The court shall determine if the visitation by the grandparent would be in the child's best interest or if it would endanger the child's physical health or impair the child's emotional development. Visitation may only be ordered when the court finds such visitation to be in the best interests of the child. The court may order reasonable conditions or restrictions on grandparent visitation.

\* \* \*

Section 452.402.

■ Construction of this statute is an issue of law, so our review is *de novo*. *Dawson v. Denney–Parker*, 967 S.W.2d 90, 92 (Mo.App.1998). "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Wheeler v. Board of Police Comm'rs of Kansas City*, 918 S.W.2d 800, 803 (Mo. App.1996). It is not the place of this court to surmise what the legislature intended to say or inadvertently failed to say. *Cohen v. Missouri Bd. of Pharmacy*, 967 S.W.2d 243, 248 (Mo.App.1998). A statute is clear and unambiguous if the language is plain and clear to a person of ordinary intelligence. *Wheeler*, 918 S.W.2d at 803. Where there is no ambiguity, there is no need to look to any other rule of construction. *Bosworth v. Sewell*, 918 S.W.2d 773, 777 (Mo. banc 1996).

■ The one word of the statute at issue is "grandparent." The word "grandparent" is not defined in the statute, so we look to a dictionary definition to determine its plain and ordinary meaning. *Badgley v. Missouri Dept. of Corrections*, 977 S.W.2d 272, 275 (Mo.App.1998). WEBSTER'S NEW COLLEGIATE DICTIONARY 500 (5th ed.1977) defines a "grandparent" as "a parent of one's father or mother." Giving the term "grandparent" its plain and ordinary meaning, the intention of the legislature is clear and unambiguous, so no further construction of the statute is necessary. By use of the word "grandparent," the legislature intended to authorize visitation to the parent of a child's father or mother. Thus, the trial court misapplied the law when it awarded grandparent visitation rights to the step-grandparents. Therefore, the award of visitation to the step-grandparents is reversed.

## CONSTITUTIONALITY OF TRIAL COURT'S VISITATION ORDER

■ The trial court ordered Father to permit the grandparents and their spouses to visit Haley every other weekend from 6 p.m. on Friday to 6 p.m. on Sunday. Father argues:

[T]his amount of visitation is excessive for a grandparent and ... the court erred in granting visitation to this extent on grounds of abuse of discretion and of amounting to an unconstitutional application of the grandparent visitation statute infringing upon his constitutional liberty and privacy rights to exercise personal choice and freedom in rearing his daughter, as guaranteed by the due process clauses of the United States Constitution, Fourteenth Amendment, and the Missouri Constitution, Article I, Section 10.

As the Supreme Court of Missouri recognized in *Herndon v. Tuhey*, 857 S.W.2d 203, 207 (Mo. banc 1993), grandparent visitation granted pursuant to § 452.402.1 impinges on a parent's rights, protected by the Fourteenth Amendment, to make decisions without undue governmental interference in the rearing of a child. The Supreme Court added, however, that a parent's right is not absolute:

> Even given the fact that the parents have a constitutional right to make decisions affecting the family, the magnitude of the infringement by the state is a significant consideration in determining whether a statute will be struck down as unconstitutional....

\* \* \*

Even a casual comparison of the visitation rights contemplated for grandparents under section 452.402 (and particularly with regard to the limited rights we approve hereinafter) with the magnitude of the infringement in [cases declaring infringement on the right to be unconstitutional] demonstrates that no constitutional violation is present in subsections 452.402.1(3) or 452.402.2.

*Id.* at 208–09. The "limited rights" that the Supreme Court approved in *Herndon* were "occasional, temporary visitation." *Id.* at 209. The Court reasoned:

> Missouri's statute is reasonable both because it contemplates only a minimal

intrusion on the family relationship and because it is narrowly tailored to adequately protect the interests of parents and children. The statute provides that a court may grant visitation to a grandparent only if the grandparent has been unreasonably denied visitation for more than ninety days. A court may grant visitation only if it will be in the best interest of the child. If visitation would endanger the child physically, mentally, or emotionally then visitation must be denied. Furthermore, the ninety-day period of unreasonable denial of visitation that must elapse before a court may enter an order under section 452.402 indicates the legislature contemplated an allowance of minimal visitation subject to reasonable restrictions and conditions as a court might find appropriate. The judicial oversight section 452.402 provides adequately ensures the best interest of a child is being served....

\* \* \*

Because the legislature set ninety days as a precondition, this is an indication to the courts that visitation should not be excessive, should not be on a par with parental visitation in custody matters, and should not necessarily be commensurate with the contact between the grandparents and grandchild prior to the deterioration of relations between the parties. *Our interpretation is based in part on the fact that if the statute allowed a great amount of visitation we would be more likely to find an undue burden on the family and hold that these subsections are unconstitutional.*

*Id.* at 210–11 (emphasis added). After finding that § 452.402.1(3) required only minimal visitation, the Supreme Court remanded the case to the trial court for it to reconsider its order of grandparent visitation for nine hours on the first and third Saturday of each month to be followed, after three months, with a schedule of nine hours' visitation on the first Saturday of

each month and an overnight stay on the third weekend of each month.[2]

The "occasional, temporary visitation" limit approved by the *Herndon* court resulted from its application of the principles of statutory construction that a statute is to be "interpreted to be consistent with the constitution of the United States if it is at all possible" and that "any doubts concerning the constitutionality of a statute will be resolved in favor of validity." *Id.* at 207. The *Herndon* court inferred from the 90–day provision of § 452.402.1(3) that "the legislature contemplated an allowance of minimal visitation." *Id.* at 210.

Although the *Herndon* court was construing the constitutionality of § 452.402.1(3) and not the remaining subsections of § 452.402.1, and although the 90–day provision appears in only § 452.402.1(3), it is clear that the occasional, minimal restriction recognized by the *Herndon* court is necessary for all of § 452.402 to be constitutional. This is evident from the *Herndon* court's recognition of the fundamental right at stake:

> [T]he United States Supreme Court has found certain rights related to marriage, family relationships, child rearing and education of children to be an area protected by the United States Constitution. In *Moore v. City of East Cleveland*, 431 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1977) (quoting *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 639–40, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974)), the Court stated: "This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment."

*Id.* at 207. Although the court considered only the constitutionality of § 452.402.1(3) because that was the issue before it, it justified the state's interfering with a parent's fundamental right to make unfettered decisions concerning his or her child's upbringing—regardless of the nature of the interference—on the ground that minimal interference with a fundamental right was acceptable.

The Southern District of this court considered a challenge to the scope of grandparent visitation ordered pursuant to subparagraph (1) of § 452.402.1, the subparagraph at issue in this case which authorizes grandparents who have been denied visitation to seek visitation rights when the parents of the child have filed for dissolution. In *Whoberry*, the Southern District found that the "minimal visitation" requirement of *Herndon* did not apply in its case, because there was not an intact nuclear family like *Herndon*, and subsection (1) of § 452.402.1, unlike subsection (3), was "devoid of language that indicates any legislative intent to limit the quantity of grandparent visitation." 977 S.W.2d at 949–50. It is significant that *Whoberry* did not address whether the visitation ordered under subparagraph (1) was constitutional. Unlike *Whoberry*, the constitutionality of the visitation order under subparagraph (1) is at issue, here, and we have already found that the constitutional constraints recognized in *Herndon* govern all subsections of § 452.402.1.

▮ In distinguishing its case from *Herndon*, the court in *Whoberry* focused on the factual difference between the nature of the family impacted by the order of grandparent visitation. In *Whoberry*, the marriage of the parents had been dissolved and the noncustodial father, who was in the military, was unable to secure regular visitation or contact between his mother, the intervenor, and his child. *Herndon* involved an intact nuclear family where the parents were estranged from the grand-

---

**2.** The trial court had also made provision for Thanksgiving and Christmas visits, summer visitation of one week, and ordered the parents to keep the grandparents informed of all of the child's school, social and athletic activities that the grandparents would reasonably be expected to attend.

parents. We recognize, of course, that what may constitute a minimal intrusion will vary according to circumstances and that the dissolution of the parents' marriage may be a significant factor that makes the state's intrusion less significant. Nevertheless, a parent does not lose the parent's fundamental right to direct the upbringing of his or children upon the dissolution of the parent's marriage. We concur with the conclusion of this court's Eastern District, in *Komosa v. Komosa*, 939 S.W.2d 479, 482 (Mo.App.1997), that application of § 452.402 "in such a manner as to constitute more than a minimal intrusion on the family relationship [is] unconstitutional and prohibited." [3] The constitutional analysis remains the same without regard for whether a parent's marriage is dissolved. *Id.* at 482–483.

■ As the United States Supreme Court has declared:

Choices about marriage, family life, and the upbringing of children are among associational rights this [c]ourt has ranked as "of basic importance in our society," *Boddie [v. Connecticut]*, 401 U.S. [371,] 376, 91 S.Ct. 780, 28 L.Ed.2d 113 [ (1971) ], rights sheltered by the Fourteenth Amendment against the [s]tate's unwarranted usurpation, disregard, or disrespect. See, for example, *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), and *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (marriage); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (procreation); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and Meyer v. Nebras-

ka, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (raising children).

*M.L.B. v. S.L.J.*, 519 U.S. 102, 116, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). "Our law affords constitutional protection to personal decisions relating to ... child rearing[.] These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment [to the United States Constitution]." *Planned Parenthood v. Casey*, 505 U.S. 833, 851, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (O'Connor, Kennedy, and Souter, JJ.). These principles apply whether a parent is divorced or married.

■ The teaching of *Herndon* is that, when a constitutionally protected fundamental right of privacy is at stake, the government can impede exercise of that right only if the impediment is minimal. This must be the case whether the intrusion results from a parent's unreasonable refusal to permit a grandparent to visit a child for more than 90 days under § 452.402.1(3), from the request for visitation when the parents' marriage is dissolved under § 452.402.1(1), or from the refusal of a parent whose spouse has died to permit reasonable grandparent visitation under § 452.402.1(2).

The visitation ordered by the circuit court in this case exceeded a minimal intrusion. While the trial court could consider the circumstance of Mother's incarceration, requiring visitation every other weekend from 6 p.m. on Friday to 6 p.m. on Sunday is not minimal. We, therefore, reverse the trial court's judgment as an unconstitutional application of § 452.402. We remand with instruction that the trial

---

**3.** The Eastern District in *Komosa*, 939 S.W.2d at 482–83, reversed the trial court's visitation award and remanded with instructions that the trial court grant visitation under the minimal intrusion guidelines of *Herndon*, which should not be more frequently than once every ninety days. Since *Herndon* did not quantify the amount of grandparent visitation that would constitute a minimal intrusion on the family relationship, the Eastern District appears to be determining that visitation once every ninety days in the area of the child's residence was a minimal intrusion considering the facts of that case. *See Ray v. Hannon*, 14 S.W.3d 270, 271 (Mo.App.2000).

court reconsider its order and restrict grandparent visitation to the level mandated by the *Herndon* court. We further instruct the trial court that its award of grandparent visitation may not include the step-grandparents.

All concur.