**T.W. by his Next Friend, R.W.,
and R.W., Individually,
Respondents,**

v.

**T.H. Appellant,**

**and**

**C.H., Intervenor–Respondent.**

**No. ED 97661.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 12, 2013.

Cheryl A. Rafert, St. Louis, MO, for appellant.

R.W., Robertsville, MO, Pro Se.

Anthony W. Cipriano, St. Louis, MO, for intervenor.

David J. Siscel, Kirkwood, MO, Guardian Ad Litem.

LAWRENCE E. MOONEY, Presiding Judge.

The mother, T.H., appeals the judgment entered by the Circuit Court of St. Louis County awarding, *inter alia*, third-party visitation with the child, T.W., to the maternal grandmother, C.H., on alternating weekends, alternating holidays, and every Christmas Day. We hold that the amount of visitation awarded the maternal grandmother impinges on the mother's constitutional rights. Furthermore, because the maternal grandmother neither pleaded nor presented a claim at trial for third-party visitation with the child pursuant to section 452.375.5(5) RSMo. (Supp.2012),[1] we reverse the trial court's judgment to the extent that it grants third-party visitation to the maternal grandmother. We affirm the trial court's judgment in all other respects.

### Facts

The mother and the father, R.W., had one child, T.W., who was age ten at the time of judgment. The parents never married, and the mother and the child lived with the maternal grandparents for most of the child's life. The mother and the maternal grandmother had a difficult relationship, which completely disintegrated when the mother told the maternal grandmother in early 2009 that the she planned to move with the child from the maternal grandparents' home. Both before and during the litigation, the Children's Division received numerous hotline calls making wide-ranging allegations against the mother, and the maternal grandmother admitted to making some of the hotline calls. The Children's Division assessments found that none of the allegations against the mother were supported.

---

1. All statutory references are to RSMo. (Supp. 2012) except as otherwise indicated.

A two-and-a-half-year custody battle over the child ensued after the mother announced her intention to move. After a heated argument in early March 2009, the mother left the maternal grandparents' home for the night at the suggestion of police. The next day, according to the mother, the father in concert with the maternal grandparents, removed the child from school without warning, apparently so that the mother could not retrieve the child. The mother sought police intervention without success to obtain the return of her child. The parties sought and obtained multiple orders of protection during the course of the litigation. In connection with the orders of protection, the parents agreed that the child would live with the maternal grandparents during the week, but agreed that nothing in the order would be deemed an admission of fact nor would it bind them in any other custody action. The mother testified that she consented to the child living with the maternal grandparents temporarily because the child had by that time already missed so much school, and she wanted him to return and finish the school year. In the meantime, the father filed in the Circuit Court of Franklin County a petition for declaration of paternity, child support, and order of sole physical and sole legal custody. The maternal grandmother filed a motion to dismiss or in the alternative to intervene in the paternity case, but did not file an accompanying pleading asserting any claim.

The Circuit Court of Franklin County transferred the paternity action to St. Louis County in August 2009. In December 2009, the maternal grandmother filed a petition for guardianship, with the father's consent, in the Circuit Court of St. Louis County, alleging that the mother was unfit to care for the child. The Circuit Court of St. Louis County consolidated the paternity action and the maternal grandmother's guardianship action, and allowed the maternal grandmother to intervene in the paternity action. At no time did the maternal grandmother file any pleading requesting any relief other than guardianship of the child. After several months of being kept from her child, the mother was finally able to obtain and exercise visitation with the child.

The trial of the paternity action and the maternal grandmother's guardianship action spanned six days between February and June 2011. The father participated *pro se* early in the trial, but repeatedly failed to take court-ordered drug tests, and then disappeared altogether. At trial, the maternal grandmother sought to establish that the mother was unfit and unable to care for the child, and filed a proposed parenting plan that gave the maternal grandparents joint legal custody of the child, sole physical custody, including all holidays, and allowed the mother and father visitation on alternate weekends. At no time did the maternal grandmother assert a claim for third-party custody or visitation with the child pursuant to section 452.375.5(5) nor did she testify that she sought such third-party custody or visitation. Rather, the maternal grandmother's only asserted claim was for guardianship of the child pursuant to section 475.030.4(2) RSMo. (2000) based on parental unfitness.

The trial court found no need existed for a third-party custodian for the child, and also denied the maternal grandmother's guardianship petition, finding no credible evidence supported a conclusion that the mother was unfit, unable, or unwilling to parent the child. The court also observed that none of the allegations made to the Children's Division against the mother were substantiated, nor was any credible evidence presented in the instant litigation to · support the allegations. The court

awarded the mother sole legal and sole physical custody of the child, and awarded the father supervised visitation upon the successful completion of a drug test. The court ordered the father to pay the mother $253 per month in child support. The court also awarded the guardian ad litem his outstanding fees of $16,750, and held the father and the maternal grandparents jointly and severally liable for the award.

The court then found, however, that "in the very unique circumstances of this family," visitation with the maternal grandparents "in an amount far beyond the extent of time that is usually awarded to grandparents" under the grandparent-visitation statute was in the child's best interest, "despite the actions taken by the [g]randparents that denied [m]other custody of [her child] for such a long time." The court awarded the maternal grandparents visitation with the child on alternate weekends, from Friday afternoon to Monday morning. In its amended judgment, the trial court clarified that only the maternal grandmother was awarded visitation, as opposed to both maternal grandparents, because she alone had filed the guardianship petition and she alone had been made a party to the paternity action. The court clarified that its award of visitation was one of third-party visitation pursuant to section 452.375.5(5), rather than pursuant to the grandparent-visitation statute found at section 452.402. The amended judgment stated that the statute permitted such an award to any other persons deemed suitable and able to provide an adequate and stable environment for the child if it is in the child's best interest to render such an award. The trial court also entered a holiday-visitation schedule that called for the mother and maternal grandmother to alternate holidays and special days with the child, and to split Christmas Day every year. The mother appeals.

*Discussion*

In two points on appeal, the mother challenges the award of visitation to the maternal grandmother because the award improperly intrudes on the mother's parental rights and because the maternal grandmother neither pleaded nor introduced at trial the issue of third-party visitation. The maternal grandmother has not filed a brief.

■ We will affirm the trial court's decision regarding an award of child custody unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Flathers v. Flathers*, 948 S.W.2d 463, 465 (Mo.App. W.D.1997).

■ We first consider the mother's claim that the extensive visitation awarded the maternal grandmother improperly intrudes on her parental rights as guaranteed by constitutional law. The trial court awarded visitation to the maternal grandmother on alternate weekends from 4:00 p.m. on Friday to 8:00 a.m. on Monday, alternating holidays, and time each Christmas Day. This weekend-visitation schedule places the child with the maternal grandmother nearly twenty percent of the time, not counting the additional holiday time. We hold that this award impermissibly impinges on the mother's fundamental constitutional right to make decisions concerning the care, custody, and control of her child.

The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." The United States Supreme Court has long recognized that the Fourteenth Amendment's Due Process Clause, like its

Fifth Amendment counterpart, guarantees more than fair process. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)(plurality opinion). The Clause includes a substantive component, providing greater protection against government interference with certain fundamental rights and liberty interests. *Id.* The liberty interest at issue in this case—the interest of a parent in the care, custody, and control of her child—is perhaps the oldest of the fundamental liberty interests recognized by the United States Supreme Court. *Id.*

The extent of an infringement on a right is essential in determining whether that right has been unconstitutionally impinged. *Blakely v. Blakely*, 83 S.W.3d 537, 541 (Mo. banc 2002)(citing *Herndon v. Tuhey*, 857 S.W.2d 203, 208 (Mo. banc 1993)). Here, the trial court awarded the maternal grandmother significant visitation based on section 452.375.5(5), rather than the grandparent-visitation statute found at section 452.402.[2] Our research reveals no Missouri case addressing when visitation awarded a third party pursuant to section 452.375.5(5) is excessive or unconstitutionally impinges on a parent's rights. Consequently, we draw guidance from cases considering grandparent visitation pursuant to section 452.402 because the constitutional question of whether such court-ordered visitation amounts to an impermissible infringement on a parent's fundamental rights are the same under either section.

Missouri's Supreme Court upheld the constitutionality of a narrow interpretation

2. Section 452.402 states:

1. The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree. The court may grant grandparent visitation when:

(1) The parents of the child have filed for a dissolution of their marriage. A grandparent shall have the right to intervene in any dissolution action solely on the issue of visitation rights. Grandparents shall also have the right to file a motion to modify the original decree of dissolution to seek visitation rights when visitation has been denied to them; or

(2) One parent of the child is deceased and the surviving parent denies reasonable visitation to a parent of the deceased parent of the child; or

(3) The child has resided in the grandparent's home for at least six months within the twenty-four month period immediately preceding the filing of the petition; and

(4) A grandparent is unreasonably denied visitation with the child for a period exceeding ninety days. However, if the natural parents are legally married to each other and are living together with the child, a grandparent may not file for visitation pursuant to this subdivision.

2. The court shall determine if the visitation by the grandparent would be in the child's best interest or if it would endanger the child's physical health or impair the child's emotional development. Visitation may only be ordered when the court finds such visitation to be in the best interests of the child. However, when the parents of the child are legally married to each other and are living together with the child, it shall be a rebuttable presumption that such parents know what is in the best interest of the child. The court may order reasonable conditions or restrictions on grandparent visitation.

3. If the court finds it to be in the best interests of the child, the court may appoint a guardian ad litem for the child. The guardian ad litem shall be an attorney licensed to practice law in Missouri. The guardian ad litem may, for the purpose of determining the question of grandparent visitation rights, participate in the proceedings as if such guardian ad litem were a party. The court shall enter judgment allowing a reasonable fee to the guardian ad litem.

4. A home study, as described by section 452.390, may be ordered by the court to assist in determining the best interests of the child.

5. The court may, in its discretion, consult with the child regarding the child's wishes in determining the best interest of the child.

6. The right of a grandparent to maintain visitation rights pursuant to this section may terminate upon the adoption of the child.

7. The court may award reasonable attorneys fees and expenses to the prevailing party.

of section 452.402 in *Herndon v. Tuhey*, 857 S.W.2d at 208. Nine years later, our Supreme Court reaffirmed the narrow interpretation adopted in *Herndon* as comporting with the standards set forth more recently in *Troxel. Blakely*, 83 S.W.3d at 544. In section 452.402, the legislature has set ninety days of unreasonable denial of visitation as a precondition to seeking grandparent visitation rights. *Herndon*, 857 S.W.2d at 210. This indicates to the courts that visitation should not be excessive, should not be on a par with parental visitation in custody matters, and should not necessarily be commensurate with the contact the grandparents enjoyed prior to the deterioration of relations between the parties. *Id.* Application of the grandparent visitation statute "in such a manner as to constitute more than a minimal intrusion on the family relationship [is] unconstitutional and prohibited." *Hampton v. Hampton*, 17 S.W.3d 599, 605 (Mo.App. W.D.2000)(quoting *Komosa v. Komosa*, 939 S.W.2d 479, 482 (Mo.App. E.D.1997)).

Missouri courts have concluded that visitation awarded to grandparents at a level similar to that awarded here exceeds a minimal intrusion on the family and thus impinges on the parents' rights. Even before the U.S. Supreme Court decided *Troxel*, our Supreme Court cautioned that visitation should neither be excessive nor on a par with parental visitation. *Herndon*, 857 S.W.2d at 210. The Court reversed and remanded a judgment providing for grandparent visitation on alternate weekends with one overnight visit per month, time near Thanksgiving and Christmas each year, two days with an overnight visit during Christmas break, one week in the summer, and notice of all of the child's activities that the grandparents might wish to attend. *Id.* at 206, 211. In the *Komosa* case, the visitation awarded was, as here, similar to that established by this Court in *Siegenthaler v.*

*Siegenthaler*, 761 S.W.2d 262 (Mo.App. E.D.1988). *Komosa*, 939 S.W.2d at 483. As the *Komosa* Court explained, the *Siegenthaler* schedule "is designed for parents," and "is totally inappropriate for grandparent visitation, which is not intended to equate with parental visitation." *Id.* Three years later, the *Hampton* Court held that requiring grandparent visitation every other weekend—far less time than the court awarded in this case—exceeded a minimal intrusion. *Hampton*, 17 S.W.3d at 605. In *Bryan v. Garrison*, the Western District held that although the maternal grandmother had custody of the child's half-brother and had been the young child's primary caregiver for six months, the visitation order must nonetheless provide only for occasional temporary visitation that was not commensurate with parental visitation and that was only a minimal intrusion on the family relationship. 187 S.W.3d 900, 912 (Mo.App. W.D. 2006).

We conclude that the trial court erroneously applied the law by awarding the maternal grandmother an amount of visitation with the child that is more than minimally intrusive and thus impinges on the mother's constitutional rights.

The mother also claims the trial court erred in awarding the maternal grandmother visitation because the maternal grandmother neither pleaded nor introduced at trial a claim for visitation, but rather pleaded and unsuccessfully sought to prove a claim for guardianship.

The maternal grandmother filed a petition pursuant to section 475.030.4(2) RSMo. (2000) of the probate code seeking guardianship of the child. Section 475.030.4(2) RSMo. (2000) provides that a court may grant letters of guardianship of the person of a minor when the parents, or sole surviving parent, are unwilling, un-

able, or adjudged unfit to assume the duties of guardianship. Finding that the mother was not an unfit, unwilling, or unable parent, the trial court denied the guardianship petition, but *sua sponte* awarded the maternal grandmother extensive visitation with the child pursuant to section 452.375.5(5). The court may award "to any other person" third-party custody or visitation "[w]hen the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interest of the child" so long as the court deems the other person(s) "to be suitable and able to provide an adequate and stable environment for the child."[3] Section 452.375.5(5)(a); *In re T.Q.L.*, 386 S.W.3d 135, 139 (Mo. banc 2012).

▮ In its amended judgment, the trial court explained that it awarded visitation to the maternal grandmother pursuant to section 452.375.5(5), stating that the statute allows such visitation when in the child's best interest if the court deems any third person suitable and able to provide an adequate and stable environment for the child. To the extent the judgment states that a court may award visitation to a suitable third party able to provide an adequate and stable environment if such is found to be in the child's best interest, the judgment erroneously declares the law.

For a court to award third-party visitation pursuant to section 452.375.5(5), the court must find not merely that such visitation is in the child's best interest. The court must also find either that the parents are unfit, unsuitable, or unable to be a custodian, or that the child's welfare requires custody or visitation with the third party. Section 452.375.5(5)(a). Courts should not treat the term "welfare" used in section 452.375.5(5)(a) as the equivalent of "best interests." *Jones v. Jones*, 10 S.W.3d 528, 536 (Mo.App. W.D.1999). Rather, the two are separate and distinct findings, and "welfare" implicates pleading and proving special or extraordinary circumstances that make third-party custody or visitation in the child's best interest. *Id.* at 536–37.

▮ Section 452.375.5(5)(b) provides that "any person may petition the court to intervene as a party in interest at any time as provided by supreme court rule." Rule 52.12(c) states that:

A person desiring to intervene shall serve a motion upon all parties affected thereby. The motion shall state the grounds therefor, *and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute of this state gives a right to intervene.*

---

**3.** We express no opinion on the continued viability of section 452.375.5(5) after *Troxel* when the custody or visitation dispute involves a fit parent. In *Young v. Young*, 59 S.W.3d 23, 28 (Mo.App. W.D.2001), the Court declined plain-error review of the statute's constitutionality, noting distinctions between section 452.375.5(5) and the "breathtakingly broad" Washington State statute at issue in *Troxel.* The *Young* Court declined to undertake constitutional scrutiny of the Missouri statute because the appellant failed to facially establish substantial grounds for believing that a manifest injustice or miscarriage of justice had occurred. 59 S.W.3d at 28. The trial court in *Young* found both parents unfit

so that the welfare of the child and her best interest required custody with a third party, and the record supported such a finding. *Id.* at 26, 30–31. On the other hand, in *Noakes v. Noakes*, the Court questioned in passing whether a step-grandparent could still invoke section 452.375.5(5) to intervene and seek visitation in light of the *Troxel* decision. 168 S.W.3d 589, 595 (Mo.App. W.D.2005). *Noakes*, a case involving section 452.402, declined to reach the step-grandparent's argument regarding section 452.375.5, however, because the appellant's objection to the step-grandparent's participation in the case was precluded by the doctrine of *res judicata. Id.* at 594–95.

(Emphasis added). Pleadings serve "the greatest utility in defining issues of a case." *Weber v. Weber*, 908 S.W.2d 356, 359 (Mo. banc 1995)(quoting *Young v. Hall*, 280 S.W.2d 679, 681 (Mo.App. Spgfld.1955)). Pleadings shall contain a short and plain statement of the facts showing that the pleader is entitled to relief, and a demand for judgment for the relief to which the pleader claims she is entitled. Rule 55.05. A party must state the facts entitling her to relief and asking the court for the remedy desired. *Weber*, 908 S.W.2d at 358–59.

The maternal grandmother did not plead a claim for third-party custody or visitation pursuant to section 452.375.5(5). The maternal grandmother filed a motion to dismiss or in the alternative to intervene in the paternity action then pending in Franklin County. In that motion, she stated that she had custody of the child by virtue of an order entered in St. Louis County, and that the child had lived with her since birth.[4] She asserted that the Circuit Court of Franklin County lacked jurisdiction over the child, that the paternity action should be dismissed or transferred to St. Louis County, or that she should be allowed to intervene. The maternal grandmother provided no other basis for desiring to intervene, and she filed no pleading in compliance with Rule 55.05 and as required by Rule 52.12 stating a claim for third-party custody or visitation with the child.

The only pleading the maternal grandmother filed was her petition seeking guardianship of the child pursuant to section 475.030.4(2) RSMo. (2000) on the basis that the mother was unfit to care for the child as his natural guardian. The maternal grandmother filed no pleading in the paternity case asserting a claim to either third-party custody or visitation pursuant to section 452.375.5(5) or for grandparent visitation pursuant to section 452.402. The maternal grandmother introduced a proposed parenting plan at trial as her Exhibit V that would have given the maternal grandparents physical custody of the child and allowed the mother and father to have visitation with the child on alternating weekends.[5] The maternal grandmother's proposed plan also awarded the maternal grandparents all holiday time with the child, and permitted the parents to visit the child on holidays only in the maternal grandparents' home. We have combed the 700–page trial transcript, and nowhere do we discern that the maternal grandmother testified that she wanted third-party custody time or visitation as an alternative to guardianship.

Furthermore, guardianship proceedings under Chapter 475 and child-custody proceedings under Chapter 452 require not only proof of different elements, but they serve different purposes. Unlike custody awarded in a dissolution or paternity action, the granting of letters of guardianship constitutes a stop-gap measure to provide for the care and custody of a child while the parents are unable, unwilling, or unfit to perform the parental function. *Flathers*, 948 S.W.2d at 468. Here, the trial court expressly found that the mother was a fit, able, and willing parent, and thus denied the guardianship petition. The

---

4. The order to which the maternal grandmother's motion referred was entered in one of the adult order-of-protection cases.

5. The judgment refers to a proposed parenting plan submitted by the maternal grandmother on July 27, 2011, one month after the trial concluded. However, the court minutes do not reflect filing of such a proposed parenting plan, and the record does not contain any proposed parenting plan submitted by the maternal grandmother other than her trial Exhibit V.

152

bases for awarding and terminating the "temporary" care and custody of a child under the guardianship statute are not the same as the bases for awarding "permanent" care and custody of a child pursuant to section 452.375. *Id.*

The maternal grandmother failed to meet the initial procedural requirements for intervention pursuant to Rule 52.12, and she failed to plead or introduce evidence to support a claim for third-party visitation. Consequently, the mother was led to believe that, as to the maternal grandmother, she was defending against a guardianship action challenging her fitness, ability, and willingness to parent her child. The mother was never put on notice that she was also defending against an unstated claim that the maternal grandmother was entitled to third-party custody or visitation because the welfare of the child required it, that it was in the best interest of the child, and that the maternal grandmother was suitable and would be able to provide an adequate and stable environment for the child. As to the custody challenge posed by the father that the mother was called to defend, the evidence revealed that the father had been involved in the child's life sporadically, he consented to the maternal grandmother's guardianship, he repeatedly failed to take court-ordered drug tests, and he disappeared before the trial's conclusion. Thus, any custody challenge the father asserted involved materially different facts and constituted a much different claim than a third-party custody or visitation challenge by the maternal grandmother, had such a claim been asserted.

The trial court erred in awarding the maternal grandmother third-party visitation when she failed to follow the proper procedure for intervention, and she neither pleaded nor introduced any such claim at trial.

### Conclusion

The trial court's award of visitation greatly exceeded that which would be minimally intrusive, and thus impinges on the mother's constitutional rights. Moreover, the maternal grandmother failed to plead or to introduce at trial a claim for third-party visitation. We are troubled by the casual manner in which the guardianship and paternity actions were pleaded, combined, and tried because the result is a judgment that impinges the mother's fundamental constitutional rights and adjudicates an unpleaded claim. We reverse the trial court's judgment to the extent that it grants the maternal grandmother third-party visitation pursuant to section 452.375.5(5).[6] We affirm the trial court's judgment in all other respects.

PATRICIA L. COHEN, J., and KURT S. ODENWALD, J., concur.

---

6. If in the future the maternal grandmother is denied visitation with the child, she might seek court-ordered visitation pursuant to section 452.402.