**In re the MARRIAGE OF Donald G. MITCHELL, Petitioner–Appellant,**

**and**

**Carolyn Mitchell, Respondent.**

No. 15493.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 8, 1988.

Peter H. Rea, Branson, for petitioner-appellant.

Joseph A. Morrissey, Branson, for respondent.

GREENE, Judge.

Donald G. Mitchell appeals from a purported judgment and orders entered on August 7, 1987, by the Circuit Court of Taney County, Missouri, in case No. CV785–421CC, in which case he was the plaintiff and his former wife, Carolyn Mitchell Stewart, was the defendant. On appeal, Donald contends, among other things, that the trial court had no jurisdiction to enter the judgment and orders in question. We agree, and reverse and remand.

The legal history preceding the entry of the challenged judgment borders on the bizarre. Donald and Carolyn were husband and wife. They had a legal interest in two tracts of Taney County land, one an 80–acre tract subject to a life estate in Jane Mitchell, Donald's mother, and a 7½–acre tract and residence referred to by the parties as "the Walnut Shade home." On April 29, 1983, the marriage of the parties was dissolved by the Circuit Court of Taney County (Case No. CV782–298 DR). The dissolution decree incorporated a property settlement agreement which had been signed by Donald and Carolyn in which Donald agreed to pay Carolyn $10,500 within 36 months of the date of the dissolution of their marriage, and Carolyn agreed to quitclaim to Donald all interest she had in the two tracts of real estate and the residence. In regard to the property settlement agreement, the decree recited that it, together with with the parties' testimony, "establishes the extent of property and its value...." The court found the property settlement agreement was "fair, reasonable and not unconscionable," and ordered the parties to carry out its terms. The tracts of land were described in the decree. The provisions of the property settlement agreement concerning payment of the $10,-

500 to Carolyn, and the fact that upon such payment the real estate was to be the sole and separate property of Donald were set out in the decree. Neither party appealed from the trial court's judgment.

After the decree was entered, Carolyn refused to execute the quitclaim deeds relinquishing her interest in the real estate, which deeds were to have been placed in escrow. After motions were filed by Donald's attorney seeking to cite Carolyn for contempt of court by refusing to sign the deeds, the trial court, on February 15, 1984, after hearing, found that Donald had been awarded the real estate described in the decree, and that Carolyn was to execute quitclaim deeds to the land but refused to do so. Carolyn was found in contempt of court and sentenced to five days in jail, but was allowed to purge herself of contempt if she would execute the deeds within ten days of the date of the order.

This was followed by a motion filed by Carolyn on May 22, 1984, in which she sought to have Donald cited for contempt of court for failure to comply with certain provisions of the property settlement agreement relative to payment of rent, child support, and transfer of title to certain items of personal property. Carolyn then changed lawyers. Her new attorney, on June 13, 1984, filed a motion to set aside the decree that had been entered on April 29, 1983, or, in the alternative, to reopen the case for hearing of additional evidence. No equitable grounds such as fraud were alleged as a basis for the motion. It was alleged that the decree was defective because it did not make findings as to the value of the marital property, and that for such reason the trial court cannot make findings that the proposed property settlement agreement is not unconscionable. The motion also alleged the trial court had failed to divide all of the marital property.

On June 21, 1984, the trial court denied the motion to set aside "the dissolution itself," and, on July 19, 1984, sustained that part of the motion asking that the case be reopened to hear additional evidence on the division of marital property. Evidence was heard on February 1, 1985. On July 29, 1985, the trial court entered an order that modified the April 29, 1983, decree. The order recited "that the distribution of property (referring to the real estate) made by the Court on April 29, 1983, was unconscionable." It valued the 7½-acre tract at $12,000, and the 80-acre tract at $27,000, and awarded the two tracts to Donald and Carolyn as tenants in common with each having one-half interest in the two properties. The modification also dealt with other matters relative to child support, personal property, attorney fees, and court costs. No appeal by either party was taken.

On December 5, 1985, Donald sued Carolyn in the Circuit Court of Taney County (Case No. CV785-421 CC). The first count of his two-count petition was an action for specific performance. It recited the fact that Carolyn, in the property settlement agreement, had promised, in consideration of payment to her of the $10,500 heretofore mentioned, and agreed to convey to Donald the real estate in question, but had refused to do so, and requested that the court "make a deed for the defendant to all of her right, title and interest in and to said land upon the performance by the plaintiff [Donald] of all of his duties under said agreement." Count II was in the alternative, and stated that if Donald was not given the relief sought under Count I of his petition, that the real estate be sold, and the proceeds be divided.

The trial court dismissed Count I, with no explanation in the record as to why, and set Count II for hearing on May 26, 1987. Before evidence was presented, counsel for Donald stated the following to the court:

MR. REA: .... Your Honor, I want to make a motion that the—that this Donald G. Mitchell, petitioner in this case, be permitted to proceed yet again on Count I, because, Your Honor,—and, Your Honor, would you please in the Court files of the original dissolution, would you— would the Court please, prior to the taking of any evidence in this matter—I bring to the Court's attention, for what it's worth, the—I have never understood the authority of the Court to set aside the decree. It was not set aside within

thirty days of the decree. Would that make a difference to the Judge?

In other words, Your Honor, if I'm right on my—if I'm right on my rule here, this Court may well be without jurisdiction to entertain this case, and I'd ask the Court to make a determination that a decree granted on a certain day in February cannot be set aside in June.

. . . .

I have never stopped pressing this Court on three issues: number one issue, a decree was granted 2–15–'84. I know of no law under the sun that permits this Court to set aside a decree in June of '84, but I'm obviously wrong, but if I'm right, Your Honor, the original decree stands.

By what authority does a Circuit Judge have to set aside a decree on a motion made beyond thirty days? It's a final decree, Your Honor. If it's final, then my lawsuit—I mean, I'm stuck with an election of remedies. I'm arguing my—my position is consistent and has been. This case is over.

Number one, this case—Your Honor, I don't know of any law that lets a February decree be set aside in June, and I have done everything in writing in briefs and suggestions and orally to seek to avoid it, but then when it comes, I defend, is all I've been able to do.

THE COURT: Call your first witness. I've made the ruling on Count I some month or two months ago.

During the hearing that followed, the trial court took judicial notice of all court records and files concerning case No. CV782–298 DR, which was the dissolution case. After the hearing, a docket entry[1] was entered by the trial court on Count II of the petition, which recited that Donald and Carolyn were tenants in common and owned equal interests in the real estate, subject to the life estate in the 80–acre tract of Donald's mother, and ordered that the land be sold and the proceeds divided between the parties, after the expenses of the sale and attorney fees were paid. This appeal followed.

In his brief filed here, Donald contends that the "trial court did not have the jurisdiction to make any orders respecting the ownership interest of these lands past and beyond a date 30 days after April 29, 1983."

 We are at a loss why it took four years to bring the jurisdictional issue to the attention of the appellate court. However, the lack of jurisdiction may be raised at any stage of the proceedings, even if raised for the first time in the appellate court. *State Tax Com'n v. Administrative Hearing*, 641 S.W.2d 69, 72 (Mo. banc 1982). Jurisdiction cannot be conferred by action or agreement of the parties. *State ex rel. Marlo v. Hess*, 669 S.W.2d 291, 293–94 (Mo. App.1984). The issue is not waived by estoppel. *State ex rel. Mo. State Highway v. Kroeger*, 682 S.W.2d 480, 483 (Mo.App. 1984). A judgment entered without jurisdiction may be collaterally attacked. *In Interest of A.H.*, 689 S.W.2d 771, 773 (Mo. App.1985). Based on these legal principles, we hold that the jurisdictional issue has been legitimately raised here.[2]

 The dissolution decree of April 29, 1983, in Case No. CV782–298 DR, became final 30 days after that date, since the record shows no exception to Rule 75.01[3] which was in effect on the date in question. The trial court is given broad discretion in the division of marital property. However, once a complete division of the property is

---

1. While in some cases a docket entry does not constitute a judgment, here the docket entry disposed of all issues and the interests of all parties and left nothing to be done except entry of a formal judgment by the clerk. As such, it constitutes a final judgment for purposes of appeal. *Byrd v. Brown*, 641 S.W.2d 163, 166 (Mo.App.1982).

2. While perhaps the true characterization of the trial court's action in setting aside the original decree is "lack of authority to exercise jurisdiction," rather than "lack of subject matter jurisdiction," an unauthorized attempt by the court to modify a judgment that has become final is void and subject to collateral attack. *See Berry v. Chitwood*, 362 S.W.2d 515, 517 (Mo.1962). However, the problem has been referred to by the appellate courts as a jurisdictional issue. *See Wandfluh v. Wandfluh*, 716 S.W.2d 420, 422 (Mo.App.1986).

3. Missouri Rules of Court, V.A.M.R.

achieved, the court's order, as it affects distribution of marital property, is a final order not subject to modification. § 452.330.4.[4] After 30 days, in absence of a motion for new trial (none was filed here), it was beyond the power of the court to alter or vacate the order distributing the marital property. *Wandfluh v. Wandfluh,* 716 S.W.2d 420, 422 (Mo.App.1986).

In her brief filed here, Carolyn's attorney seeks to blunt the impact of Rule 75.01 and cases such as *Wandfluh* by arguing that the trial court had the right to set aside the property division portions of the April 29, 1983, decree because such decree was "patently irregular under Missouri Rule of Civil Procedure 74.32." Rule 74.32, in effect at the time the trial court set aside the property division provisions in question, provided that judgments in any court of record shall not be set aside for irregularity, on motion, unless such motion be made within three years after rendition of the judgment. To be considered an irregularity within the meaning of this rule, the matter complained of must be a procedural error patent upon the face of the record which, if known, would have prevented entry of the judgment. *Centerre Bank v. Bay,* 714 S.W.2d 729, 731 (Mo.App.1986); *Estate of Kennedy v. Menard,* 690 S.W.2d 465, 470 (Mo.App.1985). The "irregularity" referred to in the rule has been defined as want of adherence to some prescribed rule or mode of procedure, consisting either in omitting to do something that is necessary for due and orderly conduct of the case, or in doing it at an unreasonable time or in an improper manner. *Rook v. John F. Oliver Trucking Company,* 505 S.W.2d 157, 160 (Mo.App.1973).

In her motion to set aside the decree, Carolyn did not allege any "irregularity" in the decree, or make reference to Rule 74.-32. She now argues that failure of the decree to set out the values of the two tracts of real estate resulted in an "irregularity" patent on the face of the record, which gave the trial court the authority to set aside the decree one year, one month, and 20 days after the judgment would have

been final, if Rule 75.01 is applied. In support of this argument, Carolyn cites *Arnsperger v. Arnsperger,* 624 S.W.2d 87 (Mo.App.1981), which case cites *Block v. Block,* 593 S.W.2d 584 (Mo.App.1979), and other like cases. *Arnsperger* holds that "[t]he trial court's approval of a property settlement must be predicated upon a finding of conscionability based upon a sufficient record of the 'economic circumstances of the parties and any other relevant evidence,'" citing § 452.325(2). There is nothing in *Arnsperger* to even hint that the failure of the decree to show that the trial court held a hearing to determine the economic circumstances of the parties before approving a property settlement agreement constituted a patent irregularity on the face of the record which would justify setting aside the decree. In *Dow v. Dow,* 732 S.W.2d 906, 908 (Mo. banc 1987), the Supreme Court of Missouri held that § 452.325 permits, but does not require, the trial court to investigate and examine the economic circumstances of the parties in determining the conscionability of a settlement agreement, but that the trial court could, if it chose, rely on the allegations of the pleadings and the assertions of the parties that their settlement agreement is equitable and not unconscionable. *Dow* expressly overruled *Block* and like cases which include *Arnsperger,* since it was based on *Block.* In addition, even before *Dow,* the Western District of the Court of Appeals, which is the same court that handed down *Block* and *Arnsperger,* in *Telge v. Telge,* 677 S.W.2d 403 (Mo.App.1984), held that a failure of the record to show that the trial court considered such factors as value before approving a property settlement agreement, provided no basis to set aside a final decree based on a property settlement agreement. Id. 405–06.

Carolyn's belated attempt to characterize her motion to set aside the original decree as a legitimate attack under former Rule 74.32 is unsupported by either fact or law. *See Godsy v. Godsy,* 565 S.W.2d 726, 732 (Mo.App.1978), *cert. denied* 439 U.S. 960, 99 S.Ct. 445, 58 L.Ed.2d 419 (1978) for a

**4.** RSMo (Supp.1984), V.A.M.S.

discussion of procedural ways to attack a final judgment, none of which are appropriate under the facts here. There has been no allegation or proof by Carolyn that the April 29, 1983, decree was obtained by fraud, that the judgment is irregular on its face, or that alleged irregularities are shown in the face of the record which caused the decree to lack finality. The judgment became final on May 29, 1983. The trial court did not have jurisdiction to entertain the motion to set aside the decree which was filed on June 13, 1984. It did not have jurisdiction to enter its judgment of July 29, 1985, which modified the April 29, 1983 decree. It follows that the trial court's judgment of July 29, 1985, which set aside the marital property distribution provisions of the April 29, 1983, decree in Case No. CV782–298 DR was void, as the trial court had no jurisdiction to enter it. Since this is so, the trial court had no jurisdiction to entertain a subsequent lawsuit in which it ordered a distribution of proceeds of the sale of the real estate in a manner contrary to the distribution provisions of the April 29, 1983, decree.

The judgment of the Circuit Court of Taney County, Missouri, in Case No. CV785–421 CC is reversed and the cause is remanded to the trial court with directions to vacate such judgment, and to set aside its judgment of July 29, 1985, in Case No. CV782–298 DR which modified the terms of the original decree.

HOLSTEIN, C.J., concurs.

CROW, P.J., concurs and files concurring opinion.

CROW, Presiding Judge, concurring.

I concur, and write for the sole purpose of commenting on footnote 1 in the principal opinion. The footnote states that inasmuch as the trial court's docket entry disposed of all issues and the interests of all parties and left nothing to be done except entry of a formal judgment by the clerk, the docket entry constituted a final judgment for purpose of appeal.

Issues as to when periods for post-judgment action begin to run can arise when a docket entry manifesting the appearance of a judgment is made on one date and a formal judgment paralleling the docket entry is entered on a later date. Such circumstances existed in *Munn v. Garrett*, 666 S.W.2d 37 (Mo.App.1984), where this District of this Court held that as it was evident the trial court did not intend the docket entry to constitute its judgment, and all parties understood that a formal judgment was to be prepared by the attorney for the winning party and submitted to the trial court for entry, the docket entry did not constitute the judgment for the purpose of determining when the 30–day period provided by Rule 75.01 began to run. *Id.* at 39[5].

In the instant case, however, it is apparent that all parties treated the docket entry —which set forth in detail the trial court's findings and conclusions, and bore the trial court's signature—as a judgment, as no separate document captioned "judgment" was ever filed. Consequently, I agree that the docket entry in the case before us constituted a final judgment for purpose of appeal.