**Karen CHIPMAN, Petitioner–Respondent,**

v.

**Jaima COUNTS, Respondent–Appellant,**

and

**Tad Sessums, Respondent.**

**No. 24977.**

Missouri Court of Appeals, Southern District, Division One.

May 14, 2003.

John M. Albright, Moore & Walsh, L.L.P., Poplar Bluff, for appellant.

Lew Polivick, Legal Services of Southern Missouri, Charleston, for respondent.

PHILLIP R. GARRISON, Judge.

Jaima Counts ("Appellant") appeals from the judgment of the trial court awarding sole legal and physical custody of her daughter, L.K.S., to Appellant's mother, Karen Chipman ("Respondent"). Appellant raises two points on appeal; we do not reach them, however, as we find the trial court lacked subject matter jurisdiction.

Appellant was divorced from her first husband, with whom she had one child, on April 8, 1994 in an Arkansas court. Shortly thereafter, L.K.S. was born to Appellant and Tad Sessums ("Sessums"). Appellant

and Sessums were never married. For the first six months of L.K.S.'s life, she lived with Appellant and Sessums. Since that time, she has lived in Respondent's home, with Respondent being her primary caregiver. At the time of trial, L.K.S. was six years old.

On February 7, 2000, Respondent filed a petition for custody, in which she sought sole legal and physical custody of L.K.S., and the child born to Appellant and her first husband.[1] Some sixteen months later, on June 19, 2001, a hearing was held on a motion of Respondent for temporary custody of L.K.S. Sessums entered his appearance as L.K.S.'s father and consented to the granting of temporary custody to Respondent. Appellant was declared in default, and the trial court entered an order granting Respondent temporary custody of L.K.S.

Eight days later, on June 27, 2001, Appellant filed a motion to set aside the temporary custody order and for leave to file responsive pleadings out of time. A hearing on these motions was held on July 12, 2001 in which the trial court, believing a full hearing was in the best interest of L.K.S., modified the temporary custody order, appointed a guardian ad litem for L.K.S. and set the case for full hearing. The court also ordered Appellant to submit to a drug test that day; Appellant complied, and the test results were negative.

On August 23, 2001, the trial court apparently took up the petition for custody, although the docket sheet indicates the court took up once again the motion to set aside the temporary custody order.[2] We are left to speculate as to the exact nature of this proceeding; in any event, it concluded, rather abruptly in the middle of Respondent's testimony, with the trial court continuing the case and ordering that temporary custody of L.K.S. remain with Respondent.

On October 9, 2001, Appellant, through newly retained counsel, filed a motion to dismiss the petition for custody, and a cross-petition for writ of habeas corpus. Six days later, on October 15, 2001, Respondent moved the court for leave to file an amended petition for custody, which was granted during a hearing on October 31, 2001.[3] At that hearing, Appellant withdrew her motion to dismiss. The trial court heard argument on Appellant's cross-petition for writ of habeas corpus, which it then denied.[4]

1. The trial court subsequently granted leave for the Missouri Department of Child Support Enforcement ("DCSE") to intervene in this case. As the issues on this appeal do not concern DCSE in any way, no further reference to its intervention appears herein.

2. We are faced, not only in this instance, but also at several points in the record on appeal, with what can only be characterized as a confusing and contradictory procedural history. Our recitation of the procedural history of this case is, therefore, the best we can discern from that record.

3. The amended petition sought custody only of L.K.S., removing any reference to the child born to Appellant during her first marriage, as had appeared in the original petition. In addition, the amended petition included new references to Appellant's "irresponsible" conduct, her "abandon[ment]" of L.K.S. and her "unwilling[ness]" to provide for L.K.S. Finally, the amended petition pled the previously unalleged fact that L.K.S. was "without a legal guardian."

4. We note that the trial court appears not to have dealt with the petition for writ of habeas corpus in the manner prescribed by Rule 91.05, which requires that a "court to which a petition for a writ of habeas corpus is presented ... forthwith grant the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the petition that the person restrained is not entitled thereto." The only provision for a hearing on a petition for writ of habeas corpus presupposes the issuing of

The case proceeded to trial on Respondent's amended petition on December 3, 2001. Significant evidence at trial showed that Appellant had a lengthy history of substance abuse, including frequent use of methamphetamine, morphine and alcohol. Following the birth of L.K.S., Appellant had numerous boyfriends with whom she often would leave for extended stays away from Respondent and L.K.S., leaving no way for Respondent to contact her in case of an emergency. Appellant's employment history was sporadic at best.

Evidence also was adduced showing that Appellant's life had stabilized somewhat by the time of trial. She had recently married, had passed numerous random drug tests and had maintained employment, albeit for a relatively short period of time, in a job that typically experiences significant turnover. Respondent continued, however, to be the primary caregiver and parental figure to L.K.S.

At the close of evidence, the trial court took the case under advisement. Five months later, on May 3, 2002, the court entered its judgment granting sole legal and physical custody of L.K.S. to Respondent. In its judgment, the trial court found specifically that it had jurisdiction over the parties and the case, based on its finding that Missouri was the home state of both L.K.S. and the parties, and that no other custody proceedings concerning L.K.S. were pending in any court. The court stated that "[i]n making a custody determination, [it had] considered the public policy of Missouri set out in Section 452.375 [5] and also the factors listed in subdivisions (1) to (8) of subsection 2 of Section 452.375." While the court ac-

knowledged that "[a]t the time of trial [Appellant's] home life and employment seemed more stable," and that it was "reluctant to label [Appellant] as totally unfit or unable to be [L.K.S.'s] custodian," it nevertheless found that she was "*unsuitable* as custodian." (emphasis in original). The court stated that "[t]his term encompasses the needs of [L.K.S.], plus the history of unreliability of [Appellant] in putting parenting ahead of her personal wants." The court found that "Section 452.375(5) require[d][it] to address the appropriateness of different custodial arrangements prior to making an award of custody." In view of the "extraordinary circumstances" of the case, the court determined that neither of L.K.S.'s parents should be awarded custody, finding instead that "third-party custody in [Respondent] [was] the most appropriate custodial arrangement" for L.K.S. based upon the court's application of Section 452.375.2(1)-(8). The trial court concluded its judgment by stating that it "*reaffirm*[ed][its] denial of [Appellant's] Petition for Writ of Habeas Corpus as shown by docket entry of October 31, 2001" (emphasis in original).

Appellant raises two points on appeal. In her first point, she alleges that the trial court erred "in applying Chapter 452 standards, divorce law, to an action brought by a grandparent to obtain custody because the only legal mechanism allowing a grandparent to initiate a custody case is under the guardianship statutes, Chapter 475[.]" Appellant also suggests under this point that, had the proper statutory scheme been applied to the evidence, there was insufficient evidence to support a find-

---

the writ and the filing of a required answer by the respondent, neither of which occurred here. *See* Rule 91.09, 91.15. References to rules are to Missouri Rules of Civil Procedure (2002) unless otherwise indicated.

5. References to statutes are to RSMo (2000) unless otherwise indicated.

ing that Appellant was unfit as a custodian to L.K.S. In her second point, Appellant apparently alleges that the trial court abused its discretion in making a finding that Respondent was the proper custodian because that finding was against the weight of the evidence.

 As stated above, we find it unnecessary to address Appellant's points on their merits, for we find the trial court lacked subject matter jurisdiction to hear the case from the outset. "A court has 'subject matter jurisdiction' if it has authority to adjudge the type of issue presented in the case that is before it." *In re McGlaughlin*, 885 S.W.2d 33, 34 (Mo.App. S.D.1994). Regardless of whether the issue is raised by the parties, an appellate court has an affirmative duty to determine jurisdiction prior to addressing the issues raised on appeal. *Henningsen v. Independent Petrochemical Corp.*, 875 S.W.2d 117, 118 (Mo.App. E.D.1994) (citing *Estate of Sawade v. State*, 787 S.W.2d 286, 288 (Mo. banc 1990)).

Neither Appellant's first point on appeal nor her argument in support of that point raise specifically the issue of jurisdiction or standing in assigning error to the trial court for applying the wrong statutory scheme to this case. Rather than identifying the court's error as jurisdictional in nature, which would render the trial court's judgment void *ab initio*, Appellant characterizes the court's error in terms of misapplying the law, a reversible error under the well-established standard announced in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976).[6]

Respondent, however, astutely recognizes the crux of Appellant's first point as being a challenge to Respondent's standing to bring the original action by way of a petition for custody. Acknowledging that "Appellant never actually questions Respondent's 'standing' in so many words," Respondent nevertheless contends that "the arguments set forth under [Appellant's first point] lead to the conclusion that Respondent's standing is in issue and, therefore, subject matter jurisdiction is also in issue."

 Respondent is correct in stating that "[s]tanding is a jurisdictional matter antecedent to the right to relief." *Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. banc 2002) (citing *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 227 n. 6 (Mo. banc 1982)). To determine a party's standing is to "ask[ ] whether the person[ ] seeking relief [has] a right to do so." *Id.* (citing *State ex rel. Twenty–Second Judicial Circuit v. Jones*, 823 S.W.2d 471, 475 (Mo. banc 1992)). If a court determines a party lacks standing, it "must dismiss the case because it does not have jurisdiction of the substantive issues presented." *Id.* (citing *State ex rel. Ryan v. Carnahan*, 960 S.W.2d 549, 550 (Mo.App. E.D.1998); Rule 55.27(g)(3)).

 With commendable candor, Respondent concedes she "did not have standing to bring the initial custody action against Appellant on February 7, 2000." Her concession is supported by *McCoy v. Rivera*, 926 S.W.2d 78 (Mo.App. W.D. 1996). In *McCoy*, a minor child's grandfather and his wife petitioned the trial court for custody of the child, who had lived with them for four years at the request of the child's mother while she was incarcerated. *Id.* at 79. The mother filed a motion to dismiss for lack of standing and subject matter jurisdiction, which the trial court

**6.** *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d), Missouri Rules of Civil Procedure (2002).

denied. *Id.* at 79–80. The court's subsequent judgment granted custody of the child to the mother, but ordered, in the best interests of the child, that transfer of custody be delayed almost five years from the date of the judgment. *Id.* at 80.

The court of appeals reversed the trial court's judgment for lack of subject matter jurisdiction. *Id.* at 81. The court noted four actions by which child custody may be adjudicated in Missouri—dissolution, habeas corpus, juvenile and guardianship. *Id.* (citing *State ex rel. Dubinsky v. Weinstein*, 413 S.W.2d 178, 180 (Mo. banc 1967)). Noting that the facts dictated that a guardianship proceeding was the only one of the four child custody actions applicable to the case, and that "[b]efore this action, no court had entered a custody order[,]" meaning the child's grandparents "had no legal right, without a court order, to retain custody" of the child, the *McCoy* court determined the trial court's judgment was void. *Id.* at 81.

■ Notwithstanding the fact that the judgment here clearly is founded upon the court's application of Chapter 452, Missouri's statutory scheme governing dissolution of marriage, this obviously is not a dissolution case; Respondent filed a petition seeking custody of her daughter's child.[7] Nor did Respondent seek custody of L.K.S. by way of a petition for writ of habeas corpus.[8] This also is not a proceeding under Chapter 211, which establishes the juvenile courts' jurisdiction, as no juvenile officer filed a petition concerning L.K.S. and seeking to terminate the parental rights of L.K.S.'s parents. *See McCoy* at 80; Section 211.447. This leaves a petition for letters of guardianship as the only means by which Respondent could properly have invoked the jurisdiction of the trial court as a grandparent seeking custody of a grandchild. *See Cotton v. Wise*, 977 S.W.2d 263, 264 (Mo. banc 1998); Section 475.030.4. Since she did not proceed under Chapter 475, Respondent did not have standing to file her petition for custody and the trial court lacked subject matter jurisdiction based on that petition. Moreover, nothing contained in the amended petition, upon which the trial court proceeded in the December 3, 2001 trial, served to remedy the jurisdictional deficiencies contained in the original petition.[9]

■ Understandably, Respondent's argument does not consist solely of her concession that the petition she filed failed to successfully invoke the trial court's jurisdiction. She goes on to argue that "[t]he reasoning in *McCoy* would dispose of this appeal were it not for the fact that Appellant conferred jurisdiction on the [trial] court to litigate the custody issue by filing a Cross-Petition for Habeas Corpus

---

7. In making this observation, we express no opinion regarding the merits of Appellant's first point on appeal, which alleges reversible error in applying dissolution law to a case where no dissolution was sought, rather than Chapter 475, which governs guardianship proceedings.

8. Indeed, Respondent could not bring an action for habeas corpus here, as the law "does not authorize an individual who has no previously existing legal right to custody of [a] child to bring an action in habeas corpus for custody." *McCoy* at 81. *See* Rule 91.01(b). "The person bringing an action in habeas corpus must stand in the position of a parent, guardian or someone entitled to custody because of some court order or judgment." *Id.* Since no court had previously granted Respondent any legal rights concerning custody of L.K.S., no habeas corpus action would lie if brought by Respondent.

9. Indeed, in conceding the jurisdictional shortcomings of her original petition, Respondent proffers no argument suggesting those shortcomings were cured in any way by the amended petition.

against Respondent on October 9, 2001." Respondent notes, correctly, the long-standing principle that a trial court has jurisdiction to determine matters pertaining to child custody in the context of a habeas corpus proceeding. *See State ex rel. Busch by Whitson v. Busch,* 776 S.W.2d 374, 376 (Mo. banc 1989); *Wakefield v. Thorp,* 365 Mo. 415, 283 S.W.2d 467, 471 (1955); *In Interest of Feemster,* 751 S.W.2d 772 (Mo.App. S.D.1988); Rule 91.01(b).

Indeed, Appellant did file the aforementioned cross-petition for writ of habeas corpus, along with a motion to dismiss, on October 9, 2001. Six days later, Respondent filed a motion for leave to file an amended petition, which was granted at a hearing on October 31, 2001. At the same hearing, the trial court heard argument on Appellant's cross-petition for writ of habeas corpus and, according to a docket sheet entry, denied the same [10] and set the case for trial of Respondent's amended petition on December 3, 2001.

Undaunted by the docket entry showing the habeas corpus petition denied on October 31, 2001, Respondent argues that the trial court "apparently" deemed Respondent's amended petition as a response to the habeas corpus petition and that it is "evident" the trial court treated the trial of December 3, 2001 as, in part, a consideration of the habeas corpus petition. In support of the latter supposition, Respondent cites us only to the portion of the final judgment where the trial court *"reaffirms"* its denial of the habeas corpus petition "as shown by docket entry of October 31, 2001."

Notwithstanding Respondent's creativity in advancing it, we find her argument that the trial court's jurisdiction accrued by way of Appellant's habeas corpus petition

unpersuasive. The fact of the matter is the trial court denied the habeas corpus petition at the October 31, 2001 hearing, following argument directed specifically to that petition. Moreover, at the start of the December 3, 2001 trial, the court indicated it was proceeding on an "amended petition for custody ... filed by [Respondent]." At no time during that trial was there any reference, direct or inferential, to the cross-petition for habeas corpus filed by Appellant. In fact, the record reveals but a single reference to Appellant's cross-petition subsequent to it being denied at the October 31, 2001 hearing, namely, the trial court's *"reaffirm* [ing]" said ruling at the conclusion of its final judgment of May 3, 2002. This notation, which Respondent assumes to be proof that the trial court considered the habeas corpus petition viable at the December 3, 2001 trial, is just as likely evidence that the trial court sought, out of an abundance of caution, to ensure its ruling of October 31, 2001 denying the habeas corpus petition was incorporated in and a part of the final judgment. In any event, by relying upon this notation as the sole evidence that the trial court had acquired subject matter jurisdiction by way of Appellant's cross-petition, Respondent, as the "litigant asserting that [the] trial court [had] jurisdiction, [failed to] bear[ ] the burden of establishing a prima facie basis for jurisdiction." *McCoy* at 80 (citing *State ex rel. Laws v. Higgins,* 734 S.W.2d 274, 277 (Mo.App. S.D.1987)).

This court is acutely mindful of the ramifications of our compelled finding that the trial court lacked subject matter jurisdiction. L.K.S., now eight years of age, has had but one consistent, stable, and, by all accounts, positive parental influence since the age of six months. For whatever reasons, Appellant, who retains custody of

---

10. See *supra* note 4.

L.K.S. by virtue of our holding, has consistently failed to provide such influence. While signs contained in the record of Appellant's nascent marital and employment stability were understandably encouraging to the trial court, substantial evidence supported its finding that the best interests of L.K.S. mandated that she remain in the custody of her grandmother pending further signs of Appellant's maturation as a potential parent figure to L.K.S.

> This case once again demonstrates the extreme difficulty the courts have in dealing with child custody matters.... In determining the best interests of children in the present, trial courts are forced, in many respects, to predict how present conditions will play out in the future, when, ultimately, we know that the only sure way to determine the best interests of children is by the passage of time.

*Flathers v. Flathers,* 948 S.W.2d 463, 471–72 (Mo.App. W.D.1997). We can, and do, hope the parties will proceed in a manner reflective of the concern both profess to have for the best interests of L.K.S. We cannot, however, avoid the fact that Respondent's petition for custody did not invoke the subject matter jurisdiction of the trial court, a deficiency that was not remedied by either Appellant's cross-petition for habeas corpus or Respondent's amended petition for custody.

The judgment of the trial court is reversed and the case is remanded to the trial court with instructions to dismiss the amended petition for custody.

MONTGOMERY, P.J., and BARNEY, J., concur.