Casey E. NOAKES, Now
Norwat, Appellant,

v.

Daniel R. NOAKES, Defendant;

Michael J. Westhusing, Respondent;

Lenora L. Westhusing, Defendant.

No. WD 64387.

Missouri Court of Appeals,
Western District.

May 24, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 2005.

Application for Transfer Denied
Aug. 30, 2005.

Richard Anthony Koehler, Butler, for appellant.

James Charles Johns, Clinton, for respondent.

Before JAMES M. SMART, JR., P.J., RONALD R. HOLLIGER, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

Casey Noakes Norwat appeals the family court's denial of her motion to dismiss Michael Westhusing as an intervenor in an action to modify the custody and visitation provisions of a dissolution decree. The judgment is affirmed.

The marriage of Casey Norwat (Mother) and Daniel Noakes (Father) was dissolved by decree in November 1998. One child was born of the marriage in 1995. During the pendency of the original dissolution proceeding, the child's paternal grandmother, Lenora Westhusing (Grandmother), and paternal step-grandfather, Michael Westhusing (Step–Grandfather), filed a motion to intervene and a motion for grandparents' visitation, pursuant to section 452.402. Mother did not oppose those motions as to either Grandmother or Step–Grandfather at that time.

Pursuant to the original dissolution decree, Mother and Father were awarded joint legal custody of the minor child. Mother was designated the "primary physical custodian," [1] with rights of specific visitation granted to Father. The court permitted Grandmother and Step–Grandfather to intervene and granted rights of visitation to both intervenors. We have not been provided a copy of the original dissolution decree, but both parties allege in subsequent motions that the original decree granted the intervenors "contemporaneous custody" with Father and provided that "in the event [Father] fails to exercise any visitation provided herein, the intervenors shall have the opportunity to exercise that visitation." That judgment was not appealed.

In February 1999, Mother filed a notice of proposed relocation, in which she sought to relocate the child's primary residence to Florida. Mother included a proposal for a revised schedule of visitation, which, in addition to making provisions for Father's visitation, also included the following provisions:

(1) The grandparents shall have visitation for a period of one week beginning on July 1 of each year;

(2) When [the child] starts school, the grandparent's visitation shall be during one of the four [ ] weeks that the child is with [Father] in the summer; and

(3) During the grandparents visitation prior to when [the child] starts school, [Mother] will bring the child to Kansas City at her expense and the grandparents will return the child to Florida at their expense.

The term "grandparents" referred to Grandmother and Step–Grandfather. The intervenors responded with a "Motion to Obtain a Revised Schedule of Visitation."

---

1. We note that section 452.375.1(1) defines "custody" as "joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof," but does not employ the term "primary physical custody." *LaRocca v. LaRocca*, 135 S.W.3d 522, 524 (Mo.App.2004). As we explained in *Loumiet v. Loumiet*, 103 S.W.3d 332, 338 (Mo.App.2003), the term "primary physical custody" is a misnomer; the question in all cases is simply whether physical custody is joint or sole.

Intervenor Step–Grandfather continued to be a party in that action. Neither Mother nor Father made any objection to Step–Grandfather's status as an intervenor.

The court entered its modification judgment in July 1999. The modified decree permitted Mother to relocate to Florida and provided for Mother and Father to have joint legal and joint physical custody of the child, with Mother designated as the "primary physical custodian." The judgment incorporated a new parenting plan, stipulated to by the parties, which included ample periods of time during which the child would reside with Father. With regard to the intervenors, the judgment stated:

> The parties recognize that during the[ ] times when the child is with [Father], the Intervenors, the paternal grandparents, will have an opportunity to spend time with the minor child. However, the purpose of this visitation is for the Father to have continuing and meaningful contact with the minor child and the minor child will primarily be with [Father].

Thus, it would appear that the Grandparents' rights to visitation were slightly diminished by the modification judgment. No appeal was taken from that judgment.

In July 2000, Mother filed a "family access" motion, which, according to Mother, was dismissed shortly thereafter "at the request of the parties." Mother also filed her first motion to dismiss Step–Grandfather as an intervenor. That motion raised for the first time the issue of the standing of Step–Grandfather to be included in any visitation order of the court. The motion cited this court's May 2000 opinion in *Hampton v. Hampton*, 17 S.W.3d 599, 602 (Mo.App.2000), which held that a *step*-grandparent has no right to visitation under the provisions of Missouri's grandparent visitation statute.

Mother's brief states that her motion to dismiss the intervenor was neither acted upon by the trial court nor pursued by her at that time.

The July 1999 modification decree remained in full force and effect until the court took up the following motions underlying this appeal: On November 24, 2003, intervenors filed a motion for contempt. Father filed a motion for contempt on May 6, 2004. (Father's earlier contempt motion, filed in October 2003, was dismissed in November when the parties failed to appear at a pre-trial meeting.) Both contempt motions related to Mother's non-compliance with various provisions of the modified parenting plan.

Mother filed several motions in response to the contempt motions. Although it is not reflected in the court's judgment in this case, Mother first filed a "Motion to Dismiss Intervenor Michael Westhusing" in December 2003, a copy of which is included in the legal file. That motion, like her earlier one, requested that the court dismiss Step–Grandfather from the case based on the argument that as a step-grandparent, he is not entitled to intervene or to be granted visitation, pursuant to *Hampton*. Mother then filed a "Motion to Dismiss the Intervenors/Motion to Quash Intervenors' Motion for Contempt" in February 2004, seeking to dismiss *both* intervenors from the case. She argued, *inter alia*, that the "broad and sweeping" grandparent visitation order was unconstitutional; that there was no specific finding that grandparent visitation was in the child's best interest; and that visitation with Grandmother was *not* in the child's best interest at that time for a variety of reasons. Mother again sought specifically to have Step–Grandfather dismissed based on *Hampton*. Alternatively, she sought to have the intervenors' contempt motion quashed.

Mother also filed a "Motion to Modify" in March, pursuant to section 452.400, in which she alleged that "substantial and continuing circumstances have occurred in the [child's] life" that warrant modification of the original and modified parenting plans. Those circumstances involved, primarily, Mother's allegation that Father and paternal Grandmother had conspired to hide the child from Mother for several days when she was supposed to be returned to Mother. In her motion to modify, Mother sought that: (1) Step–Grandfather be dismissed, again, because he has "no standing to be a part of this cause" pursuant to this court's *Hampton* decision; (2) Grandmother be dismissed from the case, or alternatively, that her contact and visitation with the child be restricted; and (3) Father's visitation be altered and restricted. According to the court's judgment, Mother also filed a "Motion to Exclude Intervenors' Participation" in May 2004, but no copy is filed with this court.

The parties' various motions were consolidated for hearing and presented to the family court. In its nunc pro tunc Order and Judgment, the court found, with regard to the contempt motions, that although Mother "willfully and intentionally denied visitation and contact" between the child, Father, and the intervenors, it "[could] not find that she acted without good cause." The contempt motions were therefore denied. With regard to Mother's motion to modify, the court found that there *had* been a change of circumstances, but that the change consisted of Mother denying visitation and contact between the child and Father and the intervenors for over four years. The court found that "contact with extended family" was in the child's best interest and, therefore, she should be "ease[d] back into visits with her paternal grandparents." The court adopted the parenting plan submitted by Father and the intervenors to replace the existing 1999 parenting plan. In addition to reiterating the language of the earlier plan as to the intervenors (i.e., that when the child is with Father, the paternal grandparents will have an opportunity to spend time with the minor child), the new plan provides that Father shall use "reasonable care and diligence" in reacquainting the child with the intervenors in such manner as he deems appropriate to alleviate the child's concerns.

Finally, and most pertinent to this appeal, the court denied Mother's "Motion to Dismiss Intervenors" and her "Motion to Exclude Intervenors' Participation" without further elaboration. Mother now appeals that judgment.

In her sole point on appeal, Mother argues that the trial court erroneously applied the law in failing to dismiss Step–Grandfather from the case because a step-grandparent has no statutory right in Missouri to intervene in a dissolution proceeding and no statutory right to visitation with a step-grandchild. Mother says the trial court, therefore, lacked subject matter jurisdiction to allow Step–Grandfather to remain in the case.

In grandparent visitation cases, as in most court-tried civil cases, this court is guided by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Hampton*, 17 S.W.3d at 601.

### Step–Grandparent Visitation

Paternal Grandmother and paternal Step–Grandfather sought and were granted leave to intervene and rights to visitation with the minor child in conjunction with Mother and Father's 1998 dissolution,

pursuant to section 452.402.[2] Mother argues, based on this court's holding in *Hampton*, 17 S.W.3d 599, that the dissolution court erred in permitting Step–Grandfather to intervene and in awarding him visitation under section 452.402. She also contends, based on *Hampton*, that the motion court in the underlying case erred in denying her motions to dismiss Step–Grandfather as well.

In *Hampton*, where the child's mother was soon to be incarcerated, both maternal grandparents and their respective spouses sought leave to intervene in the father's dissolution modification action. 17 S.W.3d at 601. The grandparents were granted leave to intervene to pursue visitation rights. The modification court granted sole legal custody to the father and awarded every-other-weekend visitation to the maternal grandparents and step-grandparents while Mother was incarcerated. *Id.* This court specifically held in *Hampton* that section 452.402, which permits grand-

parent visitation, does *not* apply to *step*-grandparents. *Id.* at 602. The court reasoned that the legislature, in using the word "grandparent," intended to authorize visitation only to the parent of a child's father or mother and held that the court, therefore, had misapplied the law in awarding visitation to the step-grandparents. *Id.* The *Hampton* court also found that the amount of visitation time granted the true grandparents was unconstitutionally excessive, and the cause was reversed and remanded with instructions to adjust the visitation time. *Id.* at 605–06 (*citing Herndon v. Tuhey*, 857 S.W.2d 203 (Mo. banc 1993)).

The Respondents essentially ignore Mother's arguments with regard to section 452.402 and *Hampton.* They instead focus on the contention that the court properly could have joined Step–Grandfather as an additional party pursuant to section 452.485[3] and awarded him visitation, pursuant to section 452.375.5,[4] after finding

---

2. Section 452.402 provides in pertinent part:
   1. The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree ... when:
   (1) The parents of the child have filed for a dissolution of their marriage. A grandparent shall have the right to intervene in any dissolution action solely on the issue of visitation rights. Grandparents shall also have the right to file a motion to modify the original decree of dissolution to seek visitation rights when visitation has been denied to them[.]
   . . . .
   2. The court shall determine if the visitation by the grandparent would be in the child's best interest or if it would endanger the child's physical health or impair the child's emotional development. Visitation may only be ordered when the court finds such visitation to be in the best interests of the child. .... The court may order reasonable conditions or restrictions on grandparent visitation.

3. Pursuant to section 452.485,

[i]f the court learns ... that a person not a party to the custody proceeding ... *claims to have ... visitation rights with respect to the child,* [the court] *may order* that person to be joined as a party and to be duly notified of the pendency of the proceeding and of his joinder as a party. (Emphasis added.)

4. The section of § 452.375.5 the Grandparents consider relevant provides in part:
   Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:
   * * * *
   (5) Third-party custody or visitation:
   (a) When the court finds that each parent is unfit, unsuitable, or unable to be a custodian, *or the welfare of the child requires, and it is in the best interests of the child,* then custody, temporary custody or *visitation may be awarded to any other person or persons deemed by the court to be suitable* and able to provide an adequate and stable environment for the child. Before the court

that the welfare of child required it and that it was in the child's best interest. They also, in oral argument, argue that the doctrine of *res judicata* bars Mother's contentions at this point in the proceeding.

It is unclear whether the statutes cited by the Respondents could have been invoked to provide Step–Grandfather the right to intervene and to seek visitation in light of the United States Supreme Court's holding in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). It is unnecessary, however, for us to address the intervenors' arguments with regard to these other statutes because, in this particular case, Mother's untimely objections to Step–Grandfather's participation are precluded by the doctrine of *res judicata.*

### Res Judicata

We agree with Mother's assertion that, as is now clear after *Hampton*, the original intervention and award of grandparent visitation to Step–Grandfather was not authorized under the grandparent visitation statute. The motion court could have granted Mother's motions to dismiss as a matter of law, based on *Hampton*, so long as her contentions were not otherwise barred.

The next question, then, is whether Mother's intentions are now otherwise barred. Grandparents point out (and Mother evidently concedes) that Mother did not object to Step–Grandfather's intervention in the original 1998 dissolution proceeding and did not appeal the original judgment that granted him visitation

awards custody, temporary custody or visitation to a third person under this subdivision, the *court shall make that person a party to the action;*

(b) Under the provisions of this subsection, any person may petition the court to *intervene as a party in interest* at any time as provided by supreme court rule.

rights.[5] Grandparents say that the matter, therefore, has been fully and finally adjudicated, and Mother now is barred from seeking to have Step–Grandfather dismissed on grounds of *res judicata.* We agree.

■ *Res judicata*, which means "a thing adjudicated," is a common law doctrine that precludes relitigation of an already adjudicated claim. *Timmerman v. Timmerman*, 139 S.W.3d 230, 235 (Mo. App.2004). The doctrine of *res judicata* is applicable to child custody and visitation provisions, except to the extent that such provisions later may be modified pursuant to applicable statutes. *See, e.g., In re Marriage of Burroughs*, 691 S.W.2d 470, 476 (Mo.App.1985); *C--- C--- v. J--- A--- C---*, 499 S.W.2d 809, 812 (Mo.App.1973); *see also* § 452.495. *Res judicata* applies not only to all the points and issues raised by the parties upon which the court was actually required to pronounce judgment, but also to every point properly belonging to the subject matter of the litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time. *Lay v. Lay*, 912 S.W.2d 466, 471 (Mo. banc 1995).

■ Section 452.402 provides that the court may grant reasonable visitation rights "to the grandparents of the child." The statute says nothing about spouses of grandparents. The term "grandparent" has a clear meaning in the law. Thus, even though no court had yet interpreted section 452.402 to preclude step-grandparent participation at the time of the original

\* \* \* \*
(Emphasis added.)

**5.** The Grandparents also point out that Mother did not object to Step–Grandfather's intervention and participation in the 1999 relocation/modification proceeding or appeal that judgment.

intervention, the issue existed in the original dissolution case and could and should have been litigated in that proceeding. The fact that *Hampton* was not decided until two years later does not assist Mother. All *Hampton* did was clarify the issue of law with regard to grandparent visitation by interpreting the statute that already existed at the time of the original intervention. For these reasons, Mother is now barred by the doctrine of *res judicata* from contesting Step–Grandfather's participation in the case and his visitation rights, except to the extent that she may seek modification of the visitation provisions on grounds permitted under the applicable statutes.[6]

■ Section 452.400 governs modification of visitation provisions. *Timmerman*, 139 S.W.3d at 234. "The court may modify an order granting or denying visitation rights whenever modification *would serve the best interests* of the child...." § 452.400.2 (emphasis added). "Proof of a substantial change of circumstances is not required to modify visitation under section 452.400.2." *Timmerman*, 139 S.W.3d at 234. A trial court may order grandparent visitation only when it finds that it is in the child's best interest and does not endanger the child's physical or emotional development. *See Herndon*, 857 S.W.2d at 209; § 452.402.2. Based on the foregoing, we conclude that *modification* of grandparent visitation rights requires only a reasonable finding that such modification is in the child's best interests.

Here, the motion court specifically found that it is in this child's best interest to resume visitation with the "paternal grandparents" (plural), obviously referring inartfully to the grandmother and the step-grandfather. The motion court included Step–Grandfather in that best interests determination. Thus, there is no need to remand for additional findings as to this issue. Whether the decree later may be modified to exclude visitation with Step–Grandfather will depend upon a court's determination as to whether such visitation remains in the child's best interests. .

### Subject Matter Jurisdiction

■ Despite Grandparents' argument that *res judicata* precludes Mother's assertions, they acknowledge that the doctrine would not apply if Mother could show that the original order was invalid on its face or that the court lacked subject matter jurisdiction. Mother *does* argue that the dissolution court lacked subject matter jurisdiction to permit Step–Grandfather to intervene and have visitation because he had no statutory right to do either. She also briefly argues that the motion court in the underlying case lacked subject matter jurisdiction on the same basis. As noted by Mother, a claim of lack of subject matter jurisdiction may be raised at any stage of the proceedings, may not be waived, and cannot be conferred by action or agreement of the parties. *See In re Marriage of Dooley*, 15 S.W.3d 747, 754 (Mo. App.2000); *In re Marriage of Mitchell*, 756 S.W.2d 949, 951 (Mo.App.1988). Thus, Mother argues, she could not have waived her right to now seek Step–Grandfather's dismissal by failing to earlier object or appeal a prior invalid judgment.

■ In part, Mother's appeal is a collateral attack on the validity of the original judgment. "A collateral attack is an attempt to impeach a judgment in a proceeding not instituted for the express pur-

---

**6.** Mother does not discuss the matter of possible modification of the grandparents' visita- tion rights.

pose of annulling the judgment." *Timmons v. Timmons*, 139 S.W.3d 625, 629 (Mo.App.2004). In general, a final judgment is immune from collateral attack so long as the court had personal and subject matter jurisdiction and the judgment was not void on its face. *Telge v. Telge*, 677 S.W.2d 403, 405 (Mo.App.1984). A lack of jurisdiction renders a judgment void. *See In re Marriage of Brown*, 878 S.W.2d 94, 98 (Mo.App.1994). A judgment that is void is a nullity that has no force or effect and cannot support a claim of *res judicata*. *McIntosh v. Wiggins*, 356 Mo. 926, 204 S.W.2d 770, 772 (1947); *see also Marriage of Brown*, 878 S.W.2d at 98.

■ We do not agree, however, that this is a question of "subject matter jurisdiction." Subject matter jurisdiction refers to the power of a court to hear and determine cases of the general class or category to which the proceedings in question belong. BLACK'S LAW DICTIONARY 1425 (6th ed.1990); *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003). Mother does not contend that the trial court lacked the authority to hear and determine cases dealing with child custody and visitation matters. Her argument, rather, is that both courts lacked the jurisdiction to permit Step–Grandfather to participate in the case.[7] *See Marriage of Brown*, 878 S.W.2d at 99 (Crahan, J., dissenting) (observing that there is a difference between the concepts of subject matter jurisdiction and "quasi-jurisdictional factual findings" necessary to determine that a particular case falls within a court's subject matter jurisdiction).

The trial court's authority to hear a child custody determination is often characterized as jurisdiction of the subject matter. *See State ex rel. Phelan v. Davis*, 965 S.W.2d 886, 890 (Mo.App.1998). Section 452.410.1 provides that a "court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450[.]" Pursuant to that statute, "[a] court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree" so long as one of the four listed criteria is met. § 452.450.1(1)-(4).[8] The motion court clearly had jurisdiction over the subject matter—the matter of the child's custody and visitation—regardless of whether or not Step–Grandfather intervened.

This case is not like *Chipman v. Counts*, 104 S.W.3d 441, 448 (Mo.App.2003), where the court remanded for dismissal because the sole petitioner lacked standing and thus had failed to invoke the court's subject matter jurisdiction. In *Chipman*, the child's grandmother petitioned for custody under the dissolution statute dealing with child custody even though the child's parents had never been married. *Id.* at 443. The appellate court reversed the award of custody to the grandmother because she did not have standing to file the petition under the dissolution statute. *Id.* at 445–46. This case is distinguishable. In that case, where the sole petitioner lacked standing, there no longer existed any case or controversy over which the court could exercise its jurisdiction. Here, regardless of whether or not Step–Grandfather par-

---

**7.** Sometimes a "court has no jurisdiction (or competency) to render a particular judgment in a particular case, for example, if statutory conditions have not been complied with, or the petition fails to plead a claim upon which relief can be granted." *Bullmaster v. Krueger*, 151 S.W.3d 380, 387 (Mo.App.2004) (citing *State ex rel. Lambert v. Flynn*, 348 Mo. 525, 154 S.W.2d 52, 57 (1941)). Here the problem

is not so much the failure to comply with statutory conditions as it is simply a misapplication of the law. Accordingly, this case does not present an issue of subject matter jurisdiction, even under the *Bullmaster* formula.

**8.** Mother does not argue that the court lacked jurisdiction because those criteria were not met.

ticipated, all the other parties in the case did have standing and presented interests that were adverse. Thus, the court had a justiciable case and controversy, and it properly exercised its jurisdiction over the custody and visitation issues.

Mother frames her argument in terms of jurisdiction. Her real complaint is that the dissolution court misapplied the law. Although the trial court may have erred in permitting Step–Grandfather to intervene and awarding him visitation, it did not deprive itself of jurisdiction by doing so. *See Valdez v. Thierry,* 963 S.W.2d 459, 461 (Mo.App.1998) (a court that has jurisdiction may decide the issues erroneously without losing that jurisdiction); *McIntosh,* 204 S.W.2d at 773 ("when a court has jurisdiction, it has jurisdiction to commit error"). Nothing is better settled than the principle that an erroneous judgment has the same *res judicata* effect as a correct one. *McIntosh,* 204 S.W.2d at 772. If the court made a mistake, it was a mistake of law, and any mistake of law should have been addressed on direct appeal. *See Valdez,* 963 S.W.2d at 461.

Because Mother never appealed the earlier erroneous rulings that granted Step–Grandfather intervention and visitation, the matter was *res judicata* in the underlying motion case in which Mother sought to dismiss Step–Grandfather. Under the circumstances, the court could have modified Step–Grandfather's visitation only after finding that it would not be in the child's best interests. The court specifically found that such visitation was in the child's best interests. The judgment is affirmed.

HOLLIGER and HARDWICK, JJ., concur.